[Civil No. 934.  Filed January 20, 1906.]

[84 Pac. 519.]

TERRITORY OF ARIZONA, Plaintiff, v. THE BOARD OF SUPERVISORS OF YAVAPAI COUNTY, ARIZONA, Composed of D. G. Sinclair et al., and JOHN H. ROBINSON, as Clerk of the Board of Supervisors of Yavapai County, Respondents.

1. MANDAMUS—OFFICE OF—PERFORMANCE OF LEGAL DUTIES. — *Mandamus* will not lie to compel county officers to perform an act which they are not authorized or required to do by some plain provision of law, the office of the writ being not to create duties, but to require the performance of duties already existing.

2. TAXES AND TAXATION—TERRITORIAL TAX—PLACE ON TAX-ROLL—REV. STATS. ARIZ. 1901, PARS. 3881, 3882, 3884, CONSTRUED.—Paragraph 3881, *supra,* provides that ''the territorial auditor shall transmit to the board of supervisors of each county a statement of the changes, if any, which have been made in the assessment by the territorial board of equalization, and the rate of tax which is to be levied and collected within said county for territorial purposes, . . . and the board of supervisors of each county shall compute and carry out in the proper column the territorial tax at the rate aforesaid.'' Paragraph 3882, *supra,* provides that ''there shall be made up and delivered to the tax-collector the 'duplicate assessment-roll,' which shall contain, carried out in separate money columns, the territorial, county, and other taxes, and totals of taxes assessed to each person or name.'' Paragraph 3884, *supra,* prescribes the form for the duplicate assessment-roll, and omits any reference to the column provided for by paragraph 3881, · *supra.* *Held,* that paragraph 3884, *supra,* is directory, indicating the form of the roll rather than its contents, and, upon receiving a statement from the territorial auditor of changes in the assessment, the board of supervisors should have noted upon the assessment-roll, and computed and carried out in a proper column, the territorial tax at the rate fixed upon the property assessed, with any additions made thereto by the territorial board of equalization.

3. SAME — CHANGE IN ASSESSMENT — NOTATION ON ASSESSMENT — BOARD OF SUPERVISORS—POWERS AND DUTIES—REV. STATS. ARIZ. 1901, PAR. 973, CONSTRUED.—Under paragraph 973, *supra,* prescribing among the powers of the boards of supervisors that of ''supervising the official conduct of all county officers . . . charged with assessing, collecting, safekeeping, management or disbursement of the public revenues,'' and further providing that the boards of supervisors have ''jurisdiction and power under such limitations

and restrictions as may be prescribed by law . . . to do and perform all acts and things which may be necessary to fully discharge all duties of the chief legislative authority of the county government,'' it is the duty of the board of supervisors to require the tax-collector to note upon the duplicate assessment-roll changes ordered by the territorial board of equalization which may not have been noted thereon by the board of supervisors before their delivery to him.

4. SAME—BOARD OF EQUALIZATION—MAY EQUALIZE BUT NOT ASSESS—VALUATION—STANDARD.—The board of equalization has no power to make an original assessment of property other than railroads. Its power being restricted to determining the scale of valuation to be adopted to harmonize and equalize assessments theretofore made, it must find the proper scale of valuation from the assessment-rolls of the various counties, either by adopting the average assessment to be ascertained therefrom or the valuation already fixed in one or more of the various counties and apply it uniformly to each county, by raising assessments which fall below and lowering assessments which are in excess of such standard.

APPLICATION for a Writ of Mandamus. Demurrer sustained.

On appeal to the United States Supreme Court.

The facts are stated in the opinion.

E. S. Clark, Attorney-General, for Plaintiff.

E. E. Ellinwood, Herring & Sorin, and Charles L. Rawlins, for Respondents.

SLOAN, J.—The territory, by and at the relation of the attorney-general, has filed its petition in this court, praying for a writ of *mandamus* to issue against the board of supervisors of Yavapai County and its clerk, to require them to add to and carry out upon the assessment-roll of said county certain increased valuations ordered by the territorial board of equalization to be placed upon said assessment-roll, and to compute and carry out thereon the territorial tax fixed by the order of said territorial board of equalization.

The petition alleges that said territorial board of equalization, pursuant to law, met at the office of the territorial auditor of the territory, on the fourth day of August, 1905, and continued in session until the seventeenth day of August,

1905; that at said session said board examined the various assessments and abstracts of assessment-rolls, which had theretofore been returned by the various counties as required by law; that by an examination made of the various assessment-rolls and abstracts so returned, the said board, at said session, ascertained that the scale of valuations had not been adjusted with reasonable uniformity by the various assessors and county boards of equalization for the year 1905, and further found specifically the percentages of the actual cash value of the various classes of property returned, as shown by said abstracts. These percentages are set forth in a table incorporated into the petition. The petition further alleges that the valuation of certain property, as shown by said returns, did not, in the judgment of the board, bear a just relation to all other valuations of property in the territory, and that therefore it became and was necessary, in the judgment of the board, to increase the valuations of certain property appearing upon said abstracts, in order to equalize the same, and to produce a just relation between all the valuations of property in the territory; that pursuant to said finding the board determined the percentages of said increase that should be made upon the assessment-rolls of the various counties upon the following classes of property: Patented mines, improvements on patented mines, milch cows, mules, saddle-horses, work-horses, range-horses, town and city lots. That as to the first class of property,—to wit, patented mines,— the territorial board had, at a meeting held prior to August, 1905, required the same to be added to the classification of property prescribed by the statute; that pursuant to said finding and order, the said board, on the seventeenth day of August, 1905, further ordered that the percentages of increase found necessary to be added upon certain of these classes, which were found not to bear a fair relation or proportion to the valuation in other counties in the territory, be added to the assessed valuation of such property in Yavapai County; that each of said classes so ordered to be raised as aforesaid is a class of property appearing and assessed as such class on the assessment-roll of said county for the year 1905, and for many years prior thereto; that in making and ordering the said increases, the said board increased the valuation of said property in said county as much and no more than in its

judgment was necessary to produce a just relation between all the valuations of property in the territory, and that the increases so made and ordered were each and all found to be just and necessary for the purpose aforesaid by said board; that the property included in the several classes, the valuation of which was increased as aforesaid, was not thereby raised beyond its full cash value.

It is further set forth in the petition that since and including the year 1887 the territorial board of equalization has raised the valuation of classes of property substantially in manner and form as it did for the year 1905, and has in each of said years thereby raised the aggregate valuation of all the property of the territory as returned by the assessors and supervisors of the several counties; that since said year it has been and become the settled practice and usage of said board to raise valuations by classes, and thereby to raise the aggregate valuation of all the property of all the counties of the territory; which practice and usage have been assented to, acquiesced in, and carried into effect by the county and territorial officers charged with any duty in that regard. It is further alleged that thereafter, and before the fourth Monday in August, 1905, the territorial auditor duly transmitted to the board of supervisors of Yavapai County, and the clerk of said board, a statement of the changes which had been made in the assessment by said board of equalization, and the rate of tax to be levied and collected within said county for territorial purposes; which said statement was duly received by said board of supervisors, and by its clerk on or before the said fourth Monday in August, 1905; that it became thereby and was the duty of said board of supervisors, and of its clerk, to add to and carry out upon the assessment-roll of said county the changes so ordered by said territorial board of equalization, as shown in said statement, and to compute and carry out in the proper column on said assessment-roll the territorial tax upon the valuation so increased as aforesaid, and as shown by said statement, and at the rate as shown therein; but the said board, and its said clerk, wrongfully and unlawfully refused and neglected, and still refuse and neglect, to add to and carry out upon said assessment-roll the changes and increased valuations aforesaid, and to compute and carry out in the proper col-

umn on said roll the territorial tax aforesaid upon said valuations; that demand was made upon said defendants to carry out the said order of said board of equalization prior to the commencement of the action. To the petition the defendants have demurred, upon the ground that it appears upon the face thereof that the same does not state facts sufficient to constitute a cause of action, or to entitle plaintiff to the issuance of said writ.

Counsel for defendants in their briefs have argued two propositions: 1. That the petition shows upon its face that the territorial board of equalization in increasing the aggregate valuation of all the property of the territory, as shown by the assessment-rolls of the various counties, and in making this increase upon classes of property within the various counties affected, and not upon the valuation of the property of the several counties as entireties, acted in excess of its jurisdiction; and 2. That, assuming that the board of equalization had power and authority to increase valuations of classes of property, and to add to the aggregate valuation of all the property of the territory, there is no statute or law giving authority to or imposing the duty upon the defendants to add to and carry out upon the assessment-roll of the county the increased valuations and changes made therein by the territorial board of equalization.

In considering the demurrer, we will take up the latter proposition first. It is true as a general proposition that *mandamus* will not lie to compel county officers to perform an act which they are not authorized or required to do by some plain provision of law, and that the office of the writ is not to create duties, but to require the performance of duties already existing. Not only so, but the law must afford the means by which public officers may discharge the duty which the law prescribes. It is contended that our statutes not only omit to prescribe as one of the duties of the board of supervisors to place upon the assessment-roll the changes made by the territorial board of equalization, and to compute and carry out in a separate column the territorial tax thereon, but they likewise fail to prescribe the means by which the board of supervisors may carry out the order of the territorial board, or cause the same to be carried out, and particularly after the duplicate assessment-roll has been made

up and turned over to the tax-collector of the county. Paragraph 3881 of the Revised Statutes of 1901 provides that "on or before the fourth Monday in August in each year the territorial auditor shall transmit to the board of supervisors of each county a statement of the changes, if any, which have been made in the assessment by the territorial board of equalization, and the rate of tax which is to be levied and collected within said county for territorial purposes; but if, for any reason, the said board fails to sit, or the board of supervisors fail to receive the statement of the rate of tax ordered by said board of equalization, the rate of thirty-five cents shall be deemed to be levied, and the board of supervisors of each county, in making up the tax-list required by this title, shall compute and carry out in the proper column a territorial tax at the rate aforesaid." Paragraph 3882 provides that on or before the third Monday in September there shall be made up and delivered to the tax-collector the "duplicate assessment-roll," which shall contain, carried out in separate money columns, the territorial, county, and other taxes, and totals of taxes assessed to each person or name. Taking these two provisions of the statute together, it is plainly the duty of the board of supervisors, upon receiving a statement from the territorial auditor of the changes which have been made in the assessment, to have noted upon the assessment-roll and computed and carried out in a proper column the territorial tax at the rate fixed upon the property assessed, with any additions made thereto by the territorial board of equalization.

It is true that the form prescribed for the duplicate assessment-roll by paragraph 3884 omits any reference to such a column as is provided for by paragraph 3881. It will be noted, however, that paragraph 3884 is directory in its terms, and, in the light of the preceding paragraphs, must be regarded as simply indicating the form of the roll, rather than its contents. It will also be observed that ample time is afforded the board of supervisors after the transmission to it by the territorial auditor of the statement of the changes which have been made by the territorial board of equalization, and the rate of tax fixed, before the duplicate assessment-roll is made up and turned over to the tax-collector, for such changes to be noted upon the assessment-roll; nor do we

think the power of the board of supervisors to cause said changes to be made upon the duplicate assessment-roll ceases when the latter is turned over to the tax-collector. Among the powers of the boards of supervisors, as prescribed by paragraph 973 of the Revised Statutes of 1901, is that of "supervising the official conduct of all county officers . . . charged with assessing, collecting, safe-keeping, management, or disbursement of the public revenues." The paragraph further provides that the board of supervisors have "jurisdiction and power, under such limitations and restrictions as may be prescribed by law, . . . to do and perform all acts and things which may be necessary to fully discharge all duties of the chief legislative authority of the county government." In these provisions of the statute we find ample power and authority given the board of supervisors of any county to require the tax-collector to note upon the duplicate assessment-roll such changes as may have been ordered by the territorial board of equalization, and which may not have been noted thereon by the board of supervisors on or before the delivery of the same to said tax-collector; and not only do we find authority conferred upon the board of supervisors to require this of the tax-collector, but we construe the statute as imposing a plain duty upon said board of supervisors to exercise its supervisory power and control over the tax-collector, so as to give effect to the action of the territorial board of equalization.

In the case of *Copper Queen Consolidated Mining Co. v. Territorial Board of Equalization, ante,* p. 383, 84 Pac. 511, it has just been decided by us that it is within the power of the territorial board of equalization, in equalizing the rate of assessment in the various counties, to raise and lower valuations of property by classes, and, as incidental to such equalization, to increase the aggregate valuation of all the property of the territory. That decision disposes of the first contention of counsel herein, under the demurrer.

The petition, however, discloses a state of facts not involved in either of the propositions hereinbefore discussed, which demands consideration. The statutes confer no power or authority upon the territorial board of equalization to make an original assessment of property, other than railroads. It may equalize assessments which have been made by the

various assessors and county boards of equalization. In doing that it is not called upon, and indeed it is not permitted, independently to fix valuations. Its power is restricted in this regard to the determination of the scale of valuation that should be adopted in order to harmonize and equalize assessments theretofore made, to the sole end and purpose of securing reasonable uniformity of valuation throughout the territory. In most instances this scale of valuation can, perhaps, best be ascertained by determining the average assessment made of any particular class of property which from its nature is of an approximately uniform value in the various counties of the territory,—as, for instance, range-cattle. In the latter instance this average could be ascertained from the abstracts by dividing the gross valuation put upon range-cattle by the number of cattle assessed. In some instances the abstracts may disclose that a valuation has been adopted by one or more of the counties which appears so nearly in accord with the general standard of valuation fixed throughout the territory, both as to the class of property to which it belongs and as to other property, as to warrant the territorial board in adopting such scale of valuation for the purpose of equalizing the assessment of such class throughout the territory. The board must find the proper scale of valuation from the assessment-rolls of the various counties, either by adopting the average assessment to be ascertained therefrom, or by adopting a valuation already fixed in one or more of the various counties. To hold otherwise would in effect be the recognition in the territorial board of a power of assessment in addition to that of equalization. If the scale of valuation be not fixed by ascertaining the average assessment in the various counties, but is found by the adoption of one already fixed by one or more of the counties, it is obvious that the aggregate valuation of property in all the counties might in some instances be increased, and in other instances decreased. The latter result is specifically prohibited by statute; the former is not.

Therefore, if the assessed valuation of any class returned by one or more of the counties be adopted as the standard of valuation for the purpose of equalization by the territorial board of equalization, such method can only lawfully be adopted where the result is not a decrease in the aggregate

valuation of all the counties, as returned by the boards of supervisors. Whichever be adopted, the territorial board must fix a standard as to such class, and this standard must be uniformly applied to each county, by raising the assessments which fall below such standard, and by lowering assessments which appear to be made in excess of such standard.

Applying this rule to the case before us, we find that the petition discloses that a uniform standard of valuation was either not determined or not applied by the territorial board of equalization to the various assessments throughout the territory by its order made in August, 1905. For instance, the board found that in Cochise County patented mines were assessed at less than two one-hundredths of one per cent of their true cash value; that in Graham County they were assessed at ten per cent of their true cash value. The assessment of patented mines was ordered to be raised fifteen hundred per cent in the former county, and four hundred per cent in the latter county. The result of this order is that in Cochise County patented mines are required to be assessed at thirty-two one-hundredths of one per cent of their true cash value, while in Graham County they are ordered to be assessed at fifty per cent of their true cash value. Again, in Pima County the finding is that patented mines were assessed at ten per cent of their true cash value, while in Yavapai County they are found to be assessed at three per cent of their true cash value. The board raised the assessment in Pima County five hundred per cent, and in Yavapai County only one hundred per cent; thus fixing the assessment of patented mines in Pima County at sixty per cent of their true cash value, and in Yavapai County only six per cent of their true cash value. In two counties—namely, Maricopa and Pinal—patented mines are found to have been assessed at fifty per cent of their true cash value, and these are permitted to stand, without increase or decrease. It is possible, therefore, that the board intended to fix as its standard of equalization the assessments made in these counties. If so, the same standard should have been applied in the other counties, so as to make a uniform assessment throughout the territory.

Again, range-horses are found to have been assessed in the counties of Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai, and Yuma at seventy per cent of their true cash

value; in the county of Cochise at sixty per cent of their true cash value; in the county of Coconino at sixty-five per cent of their true cash value; in the county of Apache at eighty-five per cent of their true cash value; while in Gila, Graham, and Maricopa counties range-horses are found to be assessed at one hundred per cent of their true cash value. The order of the board, however, leaves the assessment of range-horses in the various counties unaffected, except in the case of the counties of Pinal and Yavapai, in the former of which the assessment is ordered to be raised sixty per cent, and in the latter county seventeen per cent. Like inequalities are shown in the case of each of the other classes of property affected by the order of the board. In specific instances, as in the case of the increased valuation of range-horses in the county of Pinal, the effect of the changes ordered in certain counties is to raise the valuation of property in excess of its cash value as found by the territorial board in its table of percentages, and also in excess of any valuation put upon such property in any county of the territory. In our judgment, an increase of the valuation of the aggregate returns of all the counties is but an incident of the general scheme of equalization. It is not the purpose or end to be attained. Uniformity of assessment is the sole object sought, and whenever the scale adopted results in its application in defeating this purpose, or whenever the scale adopted has not been uniformly applied throughout the territory, inequality, and not uniformity, results, and the statutes are violated.

For the reason, therefore, that it appears upon the face of the petition that the territorial board of equalization failed to adopt and apply a uniform scale of valuation by its order made in August, 1905, and which is sought to be given effect by the writ prayed for, we hold that the petition shows upon its face that the action of said board was without authority of law, and the demurrer must be sustained.

KENT, C. J., and NAVE, J., concur.

DOAN, J., and CAMPBELL, J., concur in result.