(No. 2381.)

## MAXWELL LAND GRANT CO. et al v. JONES,

## County Treasurer.

### SYLLABUS BY THE COURT

(1) The state tax commission, being a creature of statute, has only such power and authority as are granted to it by statute. P. 429

(2) The satute having prescribed the mode to be adopted by such commission in increasing or decreasing the valuation of property, it is confined to such mode, and a failure to conform thereto or a substantial departure therefrom vitiates its action. P. 431

(3) Under the provisions of section 6, c. 54, Laws of 1915, such commission can only increase or decrease the entire property within a given county, except such as may have been valued by its previous order as well as that which it may find to be assessed at its actual value, by a uniform percentage. It cannot increase or decrease the same by classes applying different percentages of increase or decrease to the different classes. P. 431

(4) The collection of illegal taxes may be restrained by injunction. P. 434

Appeal from District Court, Colfax County; Lieb, Judge.

Suit by the Maxwell Land Grant Company and others against Henry C. Jones, as the Treasurer of Colfax County. From an order dissolving a temporary injunction restraining defendant from further attempting to collect additional taxes, plaintiffs appeal. Reversed and remanded, with instructions.

Crampton, Phillips & Darden, of Raton, for appellants.

H. S. Bowman, Atty. Gen., and A. M. Edwards, Asst. Atty. Gen., for appellee.

### OPINION OF THE COURT

BRATTON, J. This suit was instituted by the appellants, Maxwell Land Grant Company and several others, to enjoin the appellee, who is the duly elected, qualified, and acting treasurer of Colfax

county, from the collection of certain disputed taxes contended by him to be due and owing upon the respective properties owned by the appellants and situated in that county. It is charged in the joint complaint of the appellants that they properly and seasónably listed and rendered their respective properties to the tax assessor of said county for the year 1915; that all the necessary steps with regard to taxation were taken by the officials of that county, and that the properties so listed and rendered were approved as to value by such local officials; that thereafter, and during the month of September, 1915, and, without any notice to appellants, the state tax commission ascertained the total value of all properties within said Colfax county, as shown by the assessment rolls, to be $1,820,024.21 less than the actual cash value thereof, and thereupon said commissioners, by order duly entered, directed that such properties be increased upon the tax rolls of said county 11.75 per cent. Thereafter this order was amended by a subsequent order of the tax commission wherein the properties of said county were raised by classes, with different percentages of increase applied to the different classes. Agricultural and grazing lands were raised 20 per cent.; nonproductive mines and mineral lands, 10 per cent.; goats 33 1-3 per cent.; household goods, 25 per cent.; automobiles, 5 per cent., and merchandise 30 per cent. By a further provision contained in said order, certain business concerns were ommitted from the effect thereof.

Appellants paid all of the taxes due upon their respective properties according to their renditions and the values placed thereon by the local officials of Colfax county, but resisted the collection of the additional tax due by reason of the attempted raise of the state tax commission. A temporary writ of injunction restraining the treasurer of said county from further attempting to collect such additional taxes was granted, but after a hearing, which includ-

,ed much evidence with respect to the value of the properties involved, as well as properties of like classes in that county, such writ of injunction was dissolved, from which appellants have jointly appealed. Many questions are presented, but we think a decision of one is decisive of the entire case.

It is contended by appellants that the State Tax Commission exceeded its authority and acted without authority of law in making the raises or increases in values by classes, applying thereto different percentages of increase. The statute under which the commission assumed to exercise such authority is section 6, c. 54, Laws 1915, which is in the following language:

"It shall be the duty of the state tax commission to inquire into and ascertain each year the actual total value of the property subject to taxation in each county of this state as nearly as practicable, at its July meeting in each year or any adjournment thereof, the commission shall examine the assessment rolls of the several counties of the state and if the actual value of taxable property in any county as so determined by the commission is more or less than the valuation thereof as shown upon such assessment roll the commission shall, by order duly made and entered on its records increase or decrease, as the case may be, the total valuation of all the property in said county subject to taxation, as shown by such assessment rolls, except the property the valuation of which shall have been fixed by previous orders of the state tax commission, and except property which the commission shall find to be assessed at its actual value, by such percentage as will bring the total valuation of such property to the actual value thereof as acertained by said state tax commission; thereupon, it shall be the duty of such state tax commission to certify said order to the assessor of such county. It shall be the duty of said county assessor, upon receipt of such order forthwith to cause such raise or reduction to be extended upon the assessment roll of such county, by adding or deducting the same percentage upon the total assessed valuation of the property of each taxpayer in such county in accordance with the order of the state tax commission. The said commission shall have authority to amend or modify any order made by it upon a proper showing made within thirty days after the date of the entry of such order."

[1] The state tax commission is a creature of statute, and it has only such powers as are conferred

upon or granted to it by the statute under which it assumed to act, and must be able to support its action by statutory authorization. If it had the authority which it assumed to exercise in the instant case, it must derived from the statute in question. Orr v. State Bd. of Equalization 3 Idaho (Hasb.) 190, 28 Pac. 416; Bell et al. v. Meeker et al., 39 Ind. App. 224, 78 N. E. 614; Felser et al. v. Bosson et al., 189 Ind. 484, 128 N. E. 145; 37 Cyc. 1076.

An historical review of the law existing prior to the time the statute in question was enacted may well be looked to in determining the legislative intent in its passage, as there are few guides to construction which are more useful and which better aid in determining the full legislative meaning of such statutory change. In Lewis' Southerland Stat. Const. 471, the author thus declares this rule:

"It is proper to consider the origin and history of the law, the prior conditions of the law, and the general policy and course of legislation. 'There are few guides to construction more useful than that which directs attention to the prior condition of the law, to aid in determining the full legislative meaning of any statutory change thereof.' "

This doctrine has been announced with approval by this court in James v. Board of Commissioners, 24 N. M. 509, 174 Pac. 1001. Prior to the adoption of chapter 54, Laws of 1915, there was a state board of equalization whose duty it was to meet on the first Monday in July and examine the assessment roll of each county in the state for the purpose of ascertaining the rate of assessment and the valuation of the property therein. It had the power to then adjust and equalize such assessment rolls so that the valuation of properties, for the purpose of taxation, should be of substantial uniformity. This power was derived from section 13 c. 84, Laws of 1913, which is as follows:

"The state board of equalization shall at its said meeting on the first Monday in July, examine the assessment roll of each county of the state for the purpose of ascertaining the

rate of assessment and valuation of property therein, and the board shall have the power to adjust and equalize the said assessment rolls so that the valuation of property for purposes of taxation shall be of substantial uniformity throughout the state. Such board at this meeting shall also have power to hear and determine any appeals taken as hereinbefore provided, and any other appeals from the action of any county board, which may be taken by the state, or by any county, or by not less than ten taxpayers of any county, acting through a district attorney; and in case of any such appeal the appellant must file with the secretary of said board a complete transcript of the appealed case in time for consideration by said board at said meeting in July."

[**2, 3**] It is to be observed that no method to be adopted by such board of equalization in bringing about such substantial uniformity in value of properties · throughout the state was prescribed by the act, and this fact was considered in the case of South Springs Ranch & Cattle Co., v. State Board of Equalization, 18 N. M. 531, 139 Pac. 159, which was decided by this court on February 5, 1914 wherein it was held that the statute not having prescribed the mode to be adopted and followed, any reasonable and efficient mode might be adopted to accomplish the end in view. With the law thus declared, the Legislature, at its next session, enacted the law under which the action now complained of was taken, and in such act it undertook to prescribe the method and mode of procedure to which the Commission must resort. Having done so, such Commission is confined to the procedure thus prescribed, and a failure to conform thereto or any substantial departure there from vitiates its action. In State v. State Board of Equalization, 56 Mont. 413, 186 Pac. 697, the Supreme Court of Montana said:

"The powers of the board are defined by the Constitution in general terms. The duties of the board are enumerated with somewhat greater particularity by the statutes. Chapters 48 and 49, above. To the extent that the statute (chapter 49) designates a method of procedure, to that extent it constitues the rule and guide for the board's action, a failure to conform substantially to its provisions vitiates the assessment, just as a fraud or the adoption of a fundamentally wrong principal would vitiate it. Northern Pac. Ry. Co. v. Carland, 5 Mont. 146, 3 Pac. 134; Louisvill & N.

R. Co. v. Bosworth (D. C.) 230 Fed. 191; C. B. & Q. R. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.''

We have carefully examined the authorities cited in the briefs, as well as others, and fail to find any which are of great assistance to us, because all of them rest upon local statutes which differ from ours. We think, however, the statute is clear in its terms and is free from doubt. It provides that the state tax commission shall, at its July meeting or at an adjournment thereof, examine the tax rolls of the several counties in the state, and, if the actual value of taxable property in any county, as so determined by the commission, is greater or less than the value thereof assessed by the local officials, the commission shall, by order duly made, increase or decrease, as the case may be, the total value of the property within said county which is subject to taxation, except such as may have been valued by previous orders of such commission, as well as that which it may find to be assessed at its actual value, by such percentage as will bring the assessed value thereof to its actual value. Such order shall then be certified to the county assessor of such county, whose duty it is to forthwith cause such raise or reduction to be extended upon such tax rolls ''by adding the same percentage upon the total assessed valuation of the property of each taxpayer in such county in accordance with the order of the state tax commission.'' The word ''percentage'' appears twice in the statute and is in each instance in the singular, and nowhere is it used in the plural. By the express terms of the statute the Commission is permitted to increase or decrease the total valuation of the assessed properties without reference to classes or kinds, and we think such Commission has no legal authority to increase or decrease properties within a given county by classes, applying thereto different percentages of increase or decrease. This view is strengthened by the provision of the act with reference to the manner in which the county assessor shall comply with the

order, namely, by adding or deducting the same percentage upon the total assessed valuation of the property of each taxpayer. This could not possibly be done under the order complained of. To illustrate: If one taxpayer rendered agricultural and grazing lands exclusively, it was the duty of the assessor to raise his assessed valuation 20 per cent; if another rendered nonproductive mines and mineral lands exclusively, it was the duty of such assessor to raise his valuation 10 per cent.; if a third rendered only a stock of merchandise, an increase of 30 per cent. should have been made; while, if a fourth rendered some property of each class just mentioned, different percentages would necessarily have been applied. The same percentage could not be added to the total assessed valuation of the property of each of them as required by the statute. Thus its plain terms must needs have been violated by the assessor in complying with the order of the commission, clearly demonstrating that such order exceeded the terms of the statute. The powers of such commission being limited to those given it by the statute, its action in so raising the properties in Colfax county by classes, applying thereto different percentages of increase, was void.

This construction does no violence to article 8, § 1, of the Constitution, which provides that taxes levied upon tangible property shall be in proportion to the value thereof, and that taxes shall be equal and uniform upon subjects of taxation of the same class. The duty of fixing uniform values upon all property within a given county, except such as the statute requires to be originally valued by the state tax commission, is vested in the county assessor and the board of county commissioners sitting as a board of equalization, with the right of appeal granted to any taxpayer who is dissatisfied with their action concerning such uniformity of values. That is the forum within which such questions must be

presented and determined, and their determination of them is conclusive, in the absence of a statute to the contrary. In Bi-Metallic Investment Co. v. State Board of Equalization. 239 U. S. 441, 36 Sup. Ct. 141, 60 L. Ed. 372, it is said:

"On this assumption it is obvious that injustice may be suffered if some property in the county already has been valued at its full worth. But if certain property has been valued at a rate different from that generally prevailing in the county, the owner has had his opportunity to protest and appeal as usual in our system of taxation. (Hager v. Reclamation Dist., 111 U. S. 701, 710, 28 L. Ed. 569, 572, 573, 4 Sup. Ct. Rep. 663), so that it must be assumed that the property owners in the county all stand alike."

(4) The increased taxes which are here in controversy and which were created by an unauthorized increase in valuation of property are illegal, and the collection of the same may be restrained by injunction. 2 Cooley on Taxation, p. 1422; State ex rel. v. Wyatte, 124 Mo. 537, 27 S. W. 1096; Coolbaugh et al. v. Huck et al., 86 Ill. 600.

Other questions are presented, but, as this is decisive of the entire case, it is unnecessary to decide them.

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to cancel the increased taxes alleged to be due upon the respective properties of the appellants, by reason of such illegal raise in the valuation of such properties, and to reinstate and perpetuate the temporary injunction; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.