HANSEN, Relator v. WILDER et al.
STATE ex rel. SCHAEFER et al., Plaintiffs v. HALLOCK
et al., Defendants

(80 N.W.2d 306)

(Files Nos. 9642, 9643.  Opinion filed January 7, 1957)

No. 9642:

Stordahl, May & Boe, Sioux Falls, for Plaintiff.

Phil Saunders, Atty. Gen., Olin C. Thompson, Asst. Atty. Gen., for Defendants.

No. 9643:

**Boyce, Warren, Murphy & McDowell,** Sioux Falls, **E. W. Stephens,** Pierre, for Plaintiffs.

**Phil Saunders,** Atty, Gen., **Olin C. Thompson,** Asst. Atty. Gen.,for Defendants.

RUDOLPH, J. This is an original proceeding in certiorari to review the action of the State Board of Equalization.

It appears that at the 1956 meeting of the State Board of Equalization the valuation of all classes of property as returned to the State Board by the counties in the state was increased from approximately $1,800,000,000 to $2,500,000,000 This increase in valuations as made by the State Board is the basis of relators' claim that the State Board exceeded its jurisdiction and that its action is void in its entirety.

The relators make three principal contentions. First, that the State Board of Equalization is prohibited by SDC 57.0415 from in any way raising the total valuation of property in the state as returned to the State Board by the several counties. Second, that the State Board is without power to increase valuation apart from the prohibition contained in SDC 57.0415. Third, that by increasing the total valuations from $1,800,000,000 to $2,500,000,000 the State Board acted arbitrarily and capriciously and in excess of its jurisdiction.

■ We briefly consider first the function of this court in this proceeding. Obviously, we are not sitting as a State Board of Equalization nor are we in this proceeding permitted to review mere errors or irregularities, if any, committed by the State Board. Our only function is to inquire into and determine whether the State Board acted without jurisdiction or in excess of the jurisdiction conferred by law. State ex rel. American Express Company v. State Board of Assessment and Equalization, 3 S.D. 338, 53 N.W. 192.

We think it essential to preface our subsequent holding with a brief history of the duties and function of the State Board of Equalization. Ch. 28, Laws of 1897, § 44, prescribed the duties and powers of the State Board of Equalization as follows:

"It shall be the duty of said board to examine and compare the returns of the assessment of the property of the several counties of the state, and proceed to equalize the same, so that all the taxable property in the state shall be assessed at its true and proportionate value; but said board shall not reduce the aggregate assessed valuation in the state, but may increase said aggregate valuation in such an amount as may be reasonably necessary to obtain a just and true value and equalization of all the property in the state."

Sec. 45 of the same Act provides:

"Said board has the power and shall:

"First. Equalize the assessment of land by adding to the aggregate assessed value thereof, in every county in which said board may believe the value to be too low, such rate per centum as will raise the same to its proper proportionate value and by deducting from the aggregate assessed value thereof, in every county in which said board may believe the valuation to be too high such per centum as will reduce the same to its proper (proportionate) value. Town and city lots (shall be equalized in the same manner as herein provided for) equalizing lands, and, at the option of said board may be combined and equalized with lands."

The second paragraph of Section 45 provides for the equalization of the assessment of personal property in substantially the same manner as provided for the equalization of land and the third paragraph of this section provides:

"Said board, in making such equalization, may add to or deduct from the aggregate assessed valution of lands, town or city lots or any other class of personal property throughout the state, such per centum as may (be) deemed by the board to be equitable and just, but in all cases of addition to or deduction from the assessed valuation of any class of property in the several counties, or throughout the state, the rate per cent of addition or deduction shall be even and not fractional."

The provisions of Sec. 45 of the 1897 Act above quoted and referred to have remained in our law practically unchanged until the present time and are now found as part of SDC 57.0420. We think it clear that in 1897 wherein it was

provided in Sec. 45 that if the Board "believed the valuation to be too low" the basis upon which such belief was to be founded was provided in Sec. 44 of that Act by the following language: "* * * but may increase said aggregate valuation in such an amount as may be reasonably necessary to obtain a just and true value and equalization of all the property in the state." In other words, it appears that at that time the basis on which the State Board was to make its determination was the "just and true value" of the property.

The provisions of the 1897 law were modified by Sec. 2, Ch. 44, Laws of 1901. The duties of the State Board were therein prescribed as follows:

> "It shall be the duty of said board to examine and compare the returns of the assessment of the property of the several counties of the state, and proceed to equalize the same so that the taxable property of the several counties shall be assessed at its proportionate value, but said board shall not increase the aggregate assessed valuation in the state as equalized by the boards of county commissioners by more than three million dollars, * * *".

It should be noted, however, that although the duties of the State Board were changed somewhat the provisions of the above quoted Sec. 45 of the 1897 Act remained. In 1903, Laws 1903, c. 65, the $3,000,000 limitation was changed to $100,000,000 so under this 1903 Act the State Board could increase the aggregate assessed valuation as returned by the counties to the extent of $100,000,000 and at a time when the total assessed valuation of the state was only $186,973,276. See Thirtieth Annual Report, Department of Finance, page 129. In other words, following the 1903 amendment which increased the limitation from $3,000,000 to $100,000,000 the State Board of Equalization was permitted to increase the aggregate assessed valuation of the state by something more than 50%. It should be noted also that this 1903 Act empowered the State Board to not only equalize the valuations but to "assess if necessary."

This 1903 law further provided, "Any board of assessment and of equalization of state, county, city or township shall have power, and is hereby required to equalize and to

assess if necessary the property of any individual, association or corporation so that it shall be assessed as required by law." This provision of the 1903 law has been carried in our law until the present time, and is now found among the powers of the State Board contained in SDC 57.0420 wherein it is provided, "It [State Board] shall have the power and is required to equalize and to assess, if necessary, the property of any person, partnership, association, company or corporation so that it shall be assessed as required by law."

Ch. 352, Laws of 1913, created the State Tax Commission and transferred to such commission the powers and duties of the State Board of Equalization. Sec. 10 of that Act, among other things, provided that the Tax Commission "* * * shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county and between different counties of the state, and the property assessed by said commission in the first instance; such powers to be possessed by said commission regardless of any limitation now fixed by law in regard to the increase of the aggregate valuation which may be made by said board, * * *".

It appears, therefore, that in 1913 all limitation upon the action of the State Board of Equalization in increasing aggregate valuations as returned by the counties was removed and there is at present no limitation upon the State Board in this respect unless such limitation be found in SDC 57.0415, which will be hereinafter discussed. Ch. 186, Laws of 1933 transferred the power to equalize the assessment of the property in the state from the Tax Commission to the State Board of Equalization. Presently the powers, duties and jurisdiction of the State Board of Equalization are found in SDC 57.0419 and SDC 57.0420, the material parts of which we quote.

"57.0419. State Board of Equalization: general jurisdiction; notice required for increase of individual assessment. The State Board of Equalization shall have power to equalize the assessment of all property in the state between persons of the same assessment district, between cities, towns, and townships of the same county and between different

counties of the state and the property assessed by the State Board of Equalization in the first instance.

"In equalizing the assessment between persons of the same assessment district no increase of any individual assessment shall be made without notice to the person in whose name the property is assessed,which notice shall specify a time and place of hearing on the proposed increase in assessment and may be given by personal service thereof or by registered mail.

"57.0420. Meeting date of State Board: specific powers and duties; methods prescribed for equalization. The State Board of Equalization shall sit as such commencing on the first Monday of August in each year and shall continue until its duties are completed. A majority of the Board shall constitute a quorum and may act for the Board. It may adjourn from time to time by public announcement at time of the adjournment. It shall keep and file a record of its proceedings in duplicate, one with the State Auditor and one with the Secretary of Finance, either of which records shall at all times be open to public inspection.

"It shall have power and is required to equalize and to assess, if necessary, the property of any person, partnership, association, company, or corporation so that it shall be assessed as required by law.

"In connection with its general and specific powers and duties, among other things it shall:

"(1) Equalize the assessment of land and structures thereon, separately, by adding to the aggregate value thereof, in every county in which the board may believe the valuation to be too low, such rate per cent as will raise the same to its proper proportionate value, and by deducting from the aggregate assessed value thereof, in every county in which the Board may believe the value to be too high, such per cent as will reduce the same to its proper proportionate value. Town and city lots shall be equalized in the same manner as herein provided for equalizing lands;

"(2) Equalize the assessment of personal property by adding to the aggregate assessed value of any class of personal property of every county in which it believes such valuation to be too low, such

rate per cent as will raise the same to its proper proportionate value, and by deducting from the aggregate assessed value of any class of personal property, in every county in which the Board may believe the valuation to be too high, such per cent as will reduce the same to its proper proportionate value;

"(3) Such Board, in making such equalization, may add to or deduct from the aggregate assessed valuation of lands, town, or city lots, and structures thereon, separately, or any class of personal property throughout the state, such per cent as may be deemed by the Board to be equitable and just, but in all cases of addition to or deduction from the assessed valuation of any class of property in the several counties, or throughout the state, the rate per cent of addition or deduction shall be even and not fractional."

■ We consider now SDC 57.0415 which has been referred to above. The protesting taxpayers argue strenuously that the clause in this section of our law which states "* * * that the State Board of Equalization shall not in any way raise the total valuation of such property within the state" places a limitation upon the State Board which it has exceeded in this instance. This section of our Code came into our law as a part of Ch. 255, Laws of 1931. This 1931 Act is entitled "An Act for the Classification and Evaluation of Land in the Counties, and Providing Procedure Therefor." This Act provides for a petition signed by at least 20% of the resident freeholder electors of the county, action on this petition by the Board of County Commissioners and certification of such action to the Director of Taxation. Thereafter the Director of Taxation is directed to appoint some person competent to classify the lands in the county subject to taxation. The procedure is rather detailed, and it is only with reference to land classified and valued under the provisions of the 1931 Act, which has been carried over into our Code commencing with SDC 57.0412, that the limitation with reference to raising values by the State Board applies. It appears that no land has been classified or valued under the provisions of this 1931 Act either before or after the adoption of our Code and it seems clear to us, therefore, that this limitation has no application whatsoever

in this present proceeding. As stated, the limitation relates to lands valued and classified in a particular manner and there are no such lands so classified or valued in this state at the present time.

We are convinced that when the Legislature in 1913 abolished all limitation in regard to the increase of the aggregate valuation of property in the state by the State Board it intended to do exactly what it said and not having subsequently provided any limitation upon the State Board with regard to increasing valuations there is no such limitation now existing and the matter is left entirely to the discretion of the State Board of Equalization subject only to constitutional limitations.

It is important to note, we believe, that the statute, SDC 57.0420, provides no method which the State Board shall adopt in equalizing property values. The statute simply provides that if the Board "believe the valuation to be too low" or "believe the valuation to be too high". Certainly this broad language leaves the State Board with a wide discretion upon which to base its judgment in the process of equalization. The contention is made that the statute wherein it provides that after a determination that the valuation is too low or too high, the Board shall raise or lower "the same to its proper proportionate value" provides a basis upon which to equalize the assessments. But it seems to us that the phrase "raise the same to its proper proportionate value" has no meaning standing alone. It is only after determining whether the "valuation to be too low", that the phrase assumes a meaning. To be proportionate it must be proportionate to something. It seems to us that to give effect to the whole section the Board must first determine a standard upon which to determine whether the valuation be too high or too low, and then raise or lower according to that standard so that the property in one county will bear a proper proportionate value to the property in other counties.

Throughout the history of our tax laws it has always been contemplated that property in this state should be valued for the purposes of taxation at its true and full value as provided presently in SDC 57.0334. This is the standard

which our law has fixed for the purposes of taxation and when the law provides that if the State Board "believe the valuation to be too low", true and full value is the only standard the Legislature has provided upon which the Board might base such belief. Unless the State Board has used as a method or basis for equalizing property a standard in excess of true value, we are convinced that there is no basis for complaint in this case. As stated above, the Board is vested with a wide discretion and any reasonable method may be used to accomplish its purpose provided true and full value is not exceeded. As stated in Cooley on Taxation, Vol. 3, Fourth Edition, § 1196, "Where a statute empowers a State Board to equalize valuations for taxation, but does not point out the mode, any reasonable and efficient mode may be adopted. Such boards may take as a standard the particular assessment roll which, in its judgment, most nearly represents a true valuation, and conform the others to it."

■ At the outset of its proceedings the State Board adopted a resolution as follows:

"Whereas, it is impossible to determine from the county assessment records what percentage of full and true value their assessments represent; and

"Whereas, dependable ratio studies have been made from official records in the various counties; and

"Whereas, such studies disclose in some instances that the assessments exceed the true and full value,

"Now, Therefore, Be It Resolved that it is the adopted policy of the South Dakota State Board of Equalization to

"(A) By comparison with full and true values as shown by the aforementioned ration studies, determine during the course of the equalization the mean or average percentage of full and true value at which a representative number of those counties nearest approaching the full and true value have been assessed as required by the South Dakota statutes; and

"(B) Use this percentage as a standard factor or coefficient.

"(C) Equalize assessments between counties by applying this factor throughout the State to arrive at the equalization contemplated by the law.

"(D) that all official meetings of the State Board of Equalization shall be open to the public, and the Press be invited."

It is contended that the policy as expressed in this resolution by the State Board is not a reasonable and efficient mode or method on which to arrive at the equalization of property in this state. It appears from the resolution that the Board in the exercise of its judgment concluded that the ratio studies before it were "dependable". It was the Board's function to determine from the best information available and in the exercise of its own judgment whether the valuations as returned by the assessors were too low or too high. In its determination it was imperative that the Board have some standard upon which to operate and as appears from the resolution it selected as this basis or standard the "average percentage of full and true value at which a representative number of those counties nearest approaching the full and true value have been assessed as required by the South Dakota statutes, * * *". We believe the action of the Board was entirely justified. It recognized the true and full value was the goal but it also recognized the realities and in recognizing those realities, selected a representative number of counties which nearest approached the statutory requirement of true and full value and by this means obtained a factor or standard to form the basis of its action in the process of equalization. We find nothing arbitrary, unreasonable or capricious in the method thus adopted.

Our statutes vest in the State Board a wide range of entities among which values are to be equalized. We have read a large number of cases and considered many statutes of various jurisdictions and have found no statute which permits the State Board to equalize on such a broad scale as do the statutes of this state. SDC 57.0419 provides:

"The State Board of Equalization shall have power to equalize the assessment of all property in the state between persons of the same assessment district, between cities, towns, and townships of the

same county and between different counties of the state and the property assessed by the State Board of Equalization in the first instance."

SDC 57.0420 further defining the powers of the State Board provides:

"It shall have power and is required to equalize and to assess, if necessary, the property of any person, partnership, association, company, or corporation so that it shall be assessed as required by law."

As we read these statutory provisions the jurisdiction of the State Board is practically without limitation other than constitutional limitations and the statutory requirement of notice. It is directed to equalize the assessment of property between individuals of the same assessment district, between the assessment districts in the same county and between the different counties of the state and also between the property assessed by the State Board or Commissioner of Revenue in the first instance. It appears, therefore, that the process of equalization by the State Board is a complicated one and a process which the law contemplates should be left exclusively to that body and no one else.

The action of the Board considered in the light of its broad and comprehensive powers cannot be held to be in excess of its jurisdiction.

We have considered other questions raised by relators and have concluded that none of these questions defeat the jurisdiction of the State Board.

The writ of certiorari is dismissed.

ROBERTS, P. J., and RENTTO, J., concur.

HANSON, J., and BAKEWELL, Circuit Judge, sitting for SMITH, J., dissent.

HANSON, J. (dissenting). I am unable to concur. The State Board of Equalization is a creature of statute whose powers do not extend beyond those expressly delegated to it. The extent of those powers must, therefore, come from an interpretation and application of our present constitutional and statutory provisions. The laws of the past are helpful in determining their meaning but are not

controlling as to the legislative intendment of the present. Our tax laws have undergone constant and drastic change since statehood. Our present statutes are but fragmentary bits retained in the culling out process. Companion statutes that once gave a meaning to some of our present laws are no longer in effect. Our constitution too has twice been amended since 1900. Art. XI, § 2, formerly provided that "All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, * * *". The amendments thereto in 1912 and 1917 placed emphasis on uniformity and equality of taxation. The constitution now directs that "Taxes shall be uniform on all property of the same class, * * *." It further provides "* * * the valuation of property for taxation purposes shall never exceed the actual value thereof." Such provision is a limitation against confiscation of property—it is not a standard of either assessment or equalization.

A careful review of our entire statutory tax structure indicates, in my opinion, a clearly defined legislative design to keep separate the functions of "assessment" and "equalization". The subjects are separately treated in our Code. Different standards govern the application of the two.

The function of assessing property is to place a valuation thereon for purposes of taxation. This requires an intimate knowledge of particular items and parcels of property. It is a process which can only be performed by the local assessor and the local boards familiar with valuations in their respective communities. Our legislature wisely and logically placed the responsibility of assessing and evaluating property upon the local assessor and upon the governing bodies of the local townships, towns, and cities. Their guiding standard it to assess all property at its "full and true value". That such officials do not always conform to that standard may be judicially recognized. However, there are stringent methods provided in our laws to compel conformance to that standard. That property is not assessed at its full and true value is no basis, or justification, for an equalizing board to assume that function.

Under our laws the function of equalizing assessments is vested in the County Boards of Equalization and in the

State Board of Equalization. The general purpose of "equalization of assessments" is the bringing of the assessments of different parts of a taxing district to the same relative standard so that no one of the parts may be compelled to pay a disproportionate part of the tax. Cooley on Taxation, Vol. 3, § 1195, page 2390.

In performing their function of equalization neither the County Boards nor the State Board are directed or authorized to equalize property according to the standard of "full and true value." Our statute clearly prescribes a mode or method of equalization to be followed by the State Board. It directs it to "Equalize the assessment of * * * [all real and personal property] by adding to the aggregate value. thereof, in every county in which the board may believe the valuation to be too low, such rate per cent as will raise the same to its **proper proportionate value,** and by deducting from the aggregate assessed value thereof, in every county in which the Board may believe the value to be too high, such per cent as will reduce the same **to its proper proportionate value."** SDC 57.0420(1) and (2) combined. The standard of equalization is thus clearly directed to be "proper proportionate value." Webster's New International Dictionary defines the word "proportion" to be "The relation of one portion to another, or to the whole, or of one thing to another, * * * or degree; relative size or magnitude and disposition or arrangement; comparative relation; ratio; as, the proportion of the parts of a building, or of the body." This is in accord with the historical meaning of the words "equalize" or "equalization". To "equalize" means to make equal, to cause to correspond, or be alike in amount or degree as compared to something. 14A Words and Phrases, p. 439. It logically follows that in equalizing property in accordance with the standard of "proper proportionate value" the State Board is required to compare valuations throughout the State and to bring all valuations to the same relative level. In the process the high valuations must necessarily have to be lowered and the low valuations must necessarily have to be raised to some relative intermediate level. In doing so the total aggregate assessed valuations of some classes of property, or of some counties, might be increased or decreased to the extent the

same was reasonably necessary to achieve equitable equalization of all property at its proper proportionate value.

The State Board is necessarily required to find the proper scale of valuation from the abstracts of assessments of the various counties. This places a natural and logical limitation on their power to equalize. To hold otherwise is to grant such Board the unlimited inherent power to assess, in addition to their limited statutory power of equalization. Territory v. Board of Supervisors, 9 Ariz. 405, 84 P. 519.

The State Board of Equalization has no power to increase values, merely for the purpose of raising valuations. As the court stated in the case of Hacker v. Howe, 72 Neb. 385, 101 N.W. 255, at page 260:

"* * * they have authority only to equalize, and to equalize is to adjust difference in value so as to bring all to a common standard, and to the end that all property assessed shall bear its just proportion of the burdens of taxation. Where equalization is the main object, and the increase resulting therefrom is incidental, we think the action is undoubtedly a legitimate exercise of the powers conferred upon the board. If the object appeared to be to raise the aggregate of the total assessed valuation, such action would, in our judgment, have to be condemned as an unwarranted exercise of the authority to equalize."

The State Board of Equalization generally increased the 1956 assessed valuations on all classes of property in the state. It raised the total aggregate assessed valuation of all property from approximately $1,800,000,000 to $2,500,000,000 —a raise of at least 40 per cent. It substantially raised the total aggregate valuation of all real property, of all personal property, and of every county in the state. No class of real or personal property was lowered. The rates per cent of additions and deductions were largely fractional and not even as required by SDC 57.0420(3). The rate per cent of increases and decreases varied considerably within the same taxing district on the various classes of property.

In my opinion the record of the State Board's action affirmatively shows that the valuation changes made by it

were not incidental, or necessary, to an equitable equalization of the assessed valuations. The result of their actions was not equalization of property at its "proper proportionate value." Instead, it can only result in many cases of overvaluation and aggravation of existing inequalities. It further throws out of balance the percentage ratios of valuations contained in the original assessments thus shifting the burden of taxation from one class of property to another in varying degrees within the same taxing district. The reevaluation of property by the State Board constituted a re-assessment of property in excess of its limited power of equalization.

In considering the powers of the State Board it should be remembered this same body has the power to levy taxes. The present Board proceeded in the utmost good faith. They merely applied an erroneous standard. However, if such a Board has the unlimited power to revalue property, combined with the power to levy taxes, then certainly and surely they possess the potential power "to destroy". I cannot believe any legislature ever intended to sire a State Board with such enormous and unrestrained powers from which there is no statutory appeal.

BAKEWELL, Circuit Judge (dissenting).

I am unable to concur in the Court's opinion.

In the equalization of the several county assessments of property the power and duty of the Board of Equalization is defined and limited by SDC 57.0420(1), (2) and (3). The State Board of Equalization is a creature of the statute and it has only such powers as are conferred upon or granted to it by the statute upon which it assumed to act, and such board must be able to support its action by statutory authorization. If it had the authority which it exercised in the equalization of the assessments in question here, it must be derived from the statute. Campbell v. Minnehaha Nat. Bank, 11 S.D. 133, 76 N.W. 10; Orr v. State Board of Equalization, 3 Idaho Hasb. 190, 28 P. 416; Bell v. Meeker, 39 Ind.App. 224, 78 N.E. 641; Fesler v. Bosson, 189 Ind. 484, 128 N.E. 145; Maxwell Land Grant Co. v. Jones, 28 N.M. 427, 213 P. 1034.

An Idaho statute practically identical with our SDC 57.0420 except that it does not provide for equalization of personal property by classes, was construed in Orr v. State Board of Equalization, 3 Idaho, Hasb., 190, 28 P. 416, 420. In·a certiorari proceeding to review the action of the State Board of Equalization, the Court said: "* * * no power is given it to assess or fix the value of any kind of property. * * * It is profitless to multiply words to show what the board is not empowered to do. What they can do may be given in few words. They may add to or deduct from the aggregate valuation of real and personal property of a county by a certain percentage. The statute, having specified what they may do, necessarily excludes every other power."

While only going to show a strict limitation to be applied to the equalization of assessments by the Board, this Court in Campbell v. Minnehaha Nat. Bank, 11 S.D. 133, 76 N.W. 10, 11, held that under a statute authorizing the State Board of Equalization to consider certain classes of personal property one of which was " 'the total value of stocks or shares' ", the Board was not authorized to divide the property so classified and raise the value of bank stock without increasing that of other stocks and shares.

In the equalization of county assessments the Board has no power under our statutes to assess property. That is the exclusive function of the assessor and local equalization boards. The Board's power is restricted to the equalization of the assessments made and equalized in the counties with no power to increase the total aggregate value of the property as shown by such assessments. The key words in this statute are "raise" and "deduct"; and the phrases "too high" and "too low" and "proportionate value". The statute empowers the Board, if it believes the valuation shown in a particular assessment to be too high or too low, to deduct from and add to the aggregate value of that county such rate percentage as will raise or reduce the same to its proper proportionate value. And this is the only method by which equalization may be effected. The sum total of all the equalized assessments of the several counties may not be materially increased or decreased. The test of whether the Board performed its duties in this respect is best deter-

mined by the results attained as disclosed by its records which show that in eighteen of the counties personal property values were decreased in a total sum of $7,208,904, and real estate values were decreased in four counties. This reduction of real estate values represents a total of $4,754,636. These reductions of real and personal property taken together amounted to a total of $11,963,540. Adverting to the reduction made in real estate in these four counties, the record of the Board shows a reduction in Buffalo County of $274,973, in Campbell County $347,967, in Hamlin County $3,508,885, and in Mellette County $622,811. The over-all or total increase in the values of real and personal property was in an aggregate sum in excess of $700,000,000, a figure which requires no demonstration to show that it is far in excess of any increase necessary to equalize the assessments by the mode provided by statute.

As I understand the Court's opinion true and full value is the only standard upon which the Board may base a belief as to whether the assessed value is too high or too low. This I concede to be true but since it is proportionate value rather than true and full value which is to be ultimately achieved, true value may not be used further than as a factor in the adjustment of assessed value in each of the several counties.

If, however, we use true and full value only as a yardstick with which to establish the ratio between the true value and the assessed value of the property in the county to which it applies, and, as to each county pursue the same plan, the average percentage by which all the assessments exceed or fall short of full value becomes a proper factor by which to determine the rate per cent necessary to raise or lower each county assessment to an amount properly proportionate to other county assessments.

This is the mode provided by statute for equalizing county assessments at proper proportionate value. Such value is proportionate to the equalized value of the property in every other county in the state and the aggregate total of the assessed values will not and cannot be substantially in excess of the total of county valuations.

The fact that the total is in excess of the county totals by more than $700,000,000 shows that it was not the county assessments which were equalized, but some other value more nearly approaching true value.

The question here is not whether in its purported equalization the Board has used a standard in excess of true value, but is rather whether it has equalized at a value properly proportionate to the county assessments, which is the mode required by statute.

The power to equalize and to assess, if necessary, the property of any person, partnership, association, company or corporation so that it may be assessed as provided by law, as is vested in the Board by SDC 57.0420 relates to other powers original and appellate possessed by the Board and is not a power to be exercised in the equalization of assessments between the different counties of the state. Equalization of county assessments is applied to abstracts furnished by the County Auditors of the several counties which show no individual assessments of the entities before mentioned. As to county assessments the power of the Board is restricted as provided by Subdivisions (1), (2), (3) and (4) of SDC 57.0420. The last named subdivision provides that the Board shall certify to the County Auditor the equalized value of "all property within such county assessed by the State Board of Equalization as required by law" and, in addition thereto shall specify the rate per centum added to or deducted from the value of each class of real and personal property.

It is plainly evident that the Board has greatly exceeded the jurisdiction and power vested in it by the laws of this state by undertaking, in the absence of any power, to reassess the property with which it dealt. Its action in this respect is a nullity and void. I fully concur in the opinion of Judge HANSON.