In this case the Board of Revision of Taxes of the City and County of Philadelphia assessed the premises Nos. 1301-25 Chestnut Street, Ninth Ward, Philadelphia (John Wanamaker Philadelphia main department store) for purposes of taxation for the year 1947 at $19,705,300. Believing the assessment to be excessive the owner, John Wanamaker Philadelphia, took an appeal to this court and Judge Byron A. Milner of this court after a hearing de novo, at which both the appellee and appellant, presented their evidence, filed an adjudication in which he found that the actual and market value of said premises for the purpose of taxation for *Page 640 
the year 1947 was and is $19,705,300. and dismissed the appeal. The owner then filed 18 exceptions to the adjudication which we are now considering.
The property involved is the main department store of John Wanamaker Philadelphia, in the heart of the business district of Philadelphia. It occupies an entire block of ground extending from Chestnut Street on the south to Market Street on the north and from 13th Street on the east to Juniper Street on the west. Its length on 13th Street and Juniper Street is 479 feet and its width on Chestnut and Market Streets is 250 feet. The ground has a gross area of 120,271 square feet. The building consists of a twelve story basement and sub-basement department store of fireproof construction, built of reinforced concrete and steel, with granite facing on the exterior walls and brick facing on the interior walls. It is equipped with a complete sprinkler system for protection against fire. It has 30 passenger elevators of which 12 are electrically operated. Others are being remodeled from hydraulic to electric. There are in addition five combination passenger and freight elevators and eight freight elevators. Some of these are also being remodeled from hydraulic to electric. It has two pavement lifts on the Juniper Street side of the building. There are two groups of escalators extending from the basement to the fifth floor. A portion of the building has been air-conditioned. Some of the floors have galleries or mezzanines affording selling space. The net area of the building is 1,880,561 square feet and the cubical content is 33,604,789 cubic feet. The assessor's calculation of 1,787,537 square feet which he used as the net area of the building does not take into consideration 93,024 square feet used for mechanical equipment space in the basement and the portion of the building which extends outward from the curb line under the sidewalks of the various streets upon which the building faces. *Page 641 
The Board of Revision of Taxes assessed the property for taxation purposes for 1947 at $19,705,300. The land was valued at $8,980,041 and the building at $10,725,222, which makes a total of $19,705,263. The round figure of $19,705,300 was adopted as the value for the entire property. (The difference is only $37.)
In arriving at the value of the land the assessor employed a front foot value of $12,500. per front foot on Chestnut Street; $9,500. on Market Street; $4,000. on 13th Street; and $3000. on Juniper Street. The customary allowances were made for the four corner influences and 5% for plottage (shown in detail on assessor's report, N. T., p. 118 and assessor's testimony N. T., p. 5). In making the assessment he utilized his experience as an assessor, his knowledge of sales and other factors that are usually considered (N. T., pp. 7 and 8). The assessor used a total area of 1,787,537 square feet for the building and applied a value of $6. per square foot, which produced a value of $10,752,222. All of this is in substantial accordance with the usual and customary practice in valuing real estate in the central section of Philadelphia.
The appellee at the hearing offered the testimony of Louis A. Harrison, a real estate expert, who valued the entire property at $20,000,000., of which sum he allocated $9,100,000 to the land and $10,900,000. to the building. He valued the land at $75. a square foot. For the frontage he applied a value of $13,000. per front foot on Chestnut Street; $4,000. on 13th Street; $3,000. on Juniper Street, and $9,500. on Market Street. He applied allowances for corner influences and 5% for plottage. The building he valued at 33 cents per cubic foot or approximately $6. per square foot.
The appellant offered the testimony of J. Solis-Cohen, Jr., a real estate expert, who valued the entire property at $15,000,000. of which he allocated $7,822,500. to the land and $7,177,500. to the building. He valued the land at $65 per square foot. For the frontages he applied *Page 642 
a value of $12,000. per front foot on Chestnut Street; $3,000. on 13th Street; $2,000. on Juniper Street; and $9,000. on Market Street. He applied allowances for corner influences and 5% for plottage. The allowances for corner influences and plottage used by the above three witnesses were approximately the same. However, Mr. Solis-Cohen used the figure of 1,771,585 square feet as the area of the building, a figure given to him by some of the officials of Wanamaker's store. The assessor used 1,787,537. Mr. Solis-Cohen did not include the portion of the building under the sidewalk which Mr. Harrison used.
Mr. Harry Felderman, engineer for the Board of Revision of Taxes, a graduate of the Department of Engineering of the University of Pennsylvania, class of 1911, and a qualified engineer, measured the area of the Wanamaker Store building and found its area to be 1,880,561 square feet and that its cubical content is 33,604,789 cubic feet. He took into consideration the space under the sidewalks and the amount of mechanical space in the basement in making his calculation. It will be seen that the square feet and cubic feet applied by Mr. Solis-Cohen to his unit values are apparently too low. Mr. Solis-Cohen did not take into account the thickness of the walls of the building (N. T., pp. 96 and 98). Assuming that the Board is bound by the figure the assessor used, viz.: 1,787,537, his figures are still too low. (See N. T., p. 96, for explanation of the calculations.)
The burden was upon the appellant to show by the weight of the credible evidence that the valuation by the Board of Revision of Taxes was not on a proper legal basis, in that it was excessive, or unjust, inequitable or not uniform in comparison with other real estate in the district. WestburyApartments, Inc., Appeal, 314 Pa. 130; In re Premises 250 N.Front Street, 110 Pa. Super. 605; New Admiral B. L.Assn. v. Phila. et al., 18 Pa. D. C. 6. The trial judge who heard *Page 643 
the testimony adduced by both parties was not convinced from a consideration of the testimony that it had met this burden and dismissed the appeal. We concur in the findings of the trial judge and are unable to find any merit in the appellant's exceptions. We are further of the opinion that exceptions 9 to 18 are based upon a misconception of the law and practice in tax appeals such as the one we have before us.
The gist of appellant's exceptions 1 to 8 both inclusive is that the trial judge erred in finding that the actual or fair market value of the Wanamaker store property at the time of assessment was and is $19,705,300. Appellant contends in support of these exceptions that the increase of $3,396,400. in the assessment for 1947 over the assessment for the previous year is greater than the proportionate increases in the assessments of other department stores in other parts of the city covering the same years. The evidence in our opinion justifies the increase of $3,396,400. Mr. Harrison testified that the trend in value of real estate in the central part of the city has been upward since 1944 and that prices were much higher in the fall of 1946 (when the assessment was made) than they were for 1944 and 1945; that one of the factors that has brought about the increase is the competition with new construction. He testified "you cannot replace a building today for what you can buy it already completed." This increases the value of existing buildings. Also he mentioned higher living costs and wages, etc. The assessor stated that the justification for the increase "was primarily the rising real estate market which evidenced itself early in the spring of 1946, the fact that business in general showed an upswing, which in itself reflected increased value generally throughout, not only in real estate but in other forms of trade and business, rentals were showing a terrific increase, and business in general would indicate that assessments as they stood in the fall of 1946 were much too low under the law" (N. T., pp. *Page 644 
10 and 11). Furthermore we can take judicial notice of the fact (from tax appeals before this court) that the Board of Revision lowered the assessments during the war years in an effort to relieve the tax burden on the citizens. We also can take judicial notice that because of the devaluation of our currency and the inflationary trends, when you express value in terms of dollars, they are not the dollars you were talking about one, two or six years ago. It takes more dollars today to buy things which less dollars would previously have bought. We cannot shut our eyes to this plain fact. Despite these plain facts, it is interesting to note that the assessor's report introduced in evidence shows that this property was assessed in 1934 for $20,000,000., which is in excess of the present assessment (N. T., p. 118) (See also N. T., p. 72).
In recent years a number of major improvements have been added to the store, viz., elevator reconstruction, installation of escalators, air-conditioning, etc.
Counsel for appellant sought to establish his contention that the assessment was excessive by comparing it with the assessment of other department stores and other buildings. He was allowed to examine the assessor as to their assessments, but he failed to show that the other department stores or buildings were comparable to the Wanamaker store. His expert witness, Mr. Solis-Cohen, gave as his main reason for comparison of Wanamaker's with the other department stores the following: "I think they are of equal capacity for the sale of merchandise with the Wanamaker store" (N. T., p. 62). Even if this were true it would not be a proper basis of comparison. The testimony shows conclusively that the department stores relied upon by appellant, viz.: Gimbels', Snellenburg's, Strawbridge Clothier's, Frank and Seder's and Lit's, are not comparable. The Widener Building, Crozer Building and other buildings relied upon by appellant's expert witness are even less comparable. Mr. Harrison and the assessor who were *Page 645 
familiar with construction, layout and location of the other buildings, testified that Wanamaker's is a much better department store than any other they had seen in Philadelphia or New York City. The assessor, who was called as a witness for the appellant, testified there was no store in the city that would compare with Wanamaker's. The testimony shows that its construction and layout is different than that of any other department store in Philadelphia; that it has been maintained in excellent condition; that the architect who designed it was "forty years ahead of time" and that it is still a more modern department store than any other in the city (N. T., p. 103). It is in a better location, especially for quality business to which it caters. Mr. Solis-Cohen, appellant's witness, testified land values were higher at 13th and Chestnut Streets than at 8th and Market Streets. No intersecting street divides the store. Gimbel's Store at 8th and Market has a limestone front and is bisected by a street as is Snellenburg's, which has a brick front. It would be tedious to recite the differences in the buildings referred to above. None are constructed of the same materials and in the same manner as Wanamaker's. None are in the same immediate location except the Widener Building and the Crozer Building. Some are groups of old buildings which have been assembled, etc. The Widener Building is an office building and the Crozer Building is a very old office building. Most of this testimony came from witnesses for the appellant. (The assessor, Mr. M. L. Steiger, was called as a witness for appellant.) Aside from the question of the admissibility of the testimony with respect to the assessments upon these buildings, we are not persuaded that it shows that the assessment of the Wanamaker store was inequitable or that it lacked equality or uniformity. Nor was any basis established by appellant which would justify the trial judge finding that the increase in the Wanamaker store assessment was disproportionate to that of any other store or building, *Page 646 
having in mind the difference in location, construction, design, layout, etc.
Exception No. 9 relates to the action of the trial judge in overruling the objection of appellant to the Board of Revision's introduction of the assessment in evidence. There was not error and it was proper to admit the assessment. InLehigh Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272, ELKIN, J., stated at page 276:
"The orderly method . . . is to offer in evidence the assessment of record . . ., as approved by the board of revision, . . . This makes out a prima facie case showing the validity of the assessment. The complaining real estate owner then has the laboring oar to show by the weight of the evidence that he has been aggrieved by the valuation so fixed. . . . it is not a question of the sufficiency of the evidence, but of the weight of it, . . ."
See also Westbury Apartments, Inc., Appeal, 314 Pa. 130, andChatfield et al. v. Board of Revision of Taxes, 346 Pa. 159.
Exception No. 10 relates to the action of the trial judge denying appellant's motion to strike off the assessment. The assessor was placed upon the stand and examined by appellant in regard to the assessment. He was not an expert witness. The trial judge properly refused to strike it off. (See cases cited under comments upon Exception 9.) If the motion to strike off the assessment were granted the court would be obliged to substitute itself for the Board of Revision of Taxes in the initial fixing of the value of the property. It was urged that the assessment was improperly made. The assessor's testimony showed that the assessment was properly made. He does not testify as an expert and it is sufficient if he bases his valuation upon his experience and opinion as to the fair market value of a property. See Metropolitan Edison Co.'s Appeal,307 Pa. 401. The assessor first fixed the value of the property as an entirety and then fixed the value of the land and *Page 647 
allocated the balance to the building. Appellant disapproves of this method of making the assessment. We are unable to agree with appellant's position.
In discussing the development of the assessment of taxes on real estate and its interpretation by our courts in Pennsylvania, COULTER, J., in Insurance Co. v. Yard, 17 Pa. 331
(1851), on pages 337 and 338, said:
"Our primary officers, such as assessors and collectors, come annually from the body of the people. Honesty and fair intentions towards their fellow citizens are deemed sufficient to compensate for the want of technical book-learning. If they do what is substantially just, and what will enable the citizen to guard against oppression in the mode pointed out in the law, and what will enable him by appeal to the proper tribunal to guard against inequality between himself and those in like circumstances — all is performed which is just and necessary to give him the full benefit of the laws."
 In Pittsburgh Terminal Coal Company Appeals, 83 Pa. Super. 535, Judge GAWTHROP said at pages 537 and 538:
"When an appeal is taken from the decision of the board of revision and appealed to the court of common pleas, the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable, but whether the assessment of the subject as a whole is just and equitable." See also Susquehanna Collieries Company's Appeal335 Pa. 337; Metropolitan Edison Co.'s Appeal, 307 Pa. 401,404.
Exception 17 relates to the action of the trial judge overruling an objection of counsel for appellant to a question asked by appellee's counsel on cross-examination of appellant's real estate expert, Mr. Solis-Cohen. He was asked about a sale of premises 1316 to 1324 Chestnut Street. The question was "Q. Then when the property 1316 was not resold, but 1318 to 1324 was *Page 648 
resold, can you give us the price at which that was resold?" Counsel for appellant objected to the question, saying "that is subsequent to the date of the assessment" (N.T., p. 86). The objection was overruled. The properties were originally sold together on May 7, 1946, and the owners took back premises 1316 and sold premises 1318 to 1324. The last sale took place May 15, 1947, according to the testimony given later. The question was not asked by appellee for the purpose of proving value, but was propounded to an expert witness on cross-examination for the purpose of testing his credibility, good faith, accuracy and the extent of his knowledge. The ruling of the trial judge was proper. See Brown v. City of Scranton, 231 Pa. 593, 603,604; Bridgman Realty Corporation v. Philadelphia, 317 Pa. 449,452; Felin v. Philadelphia, 354 Pa. 317, 318, 319.
Exception No. 18 relates to objection of appellant's counsel to the trial judge's ruling that appellee's witness, Mr. Louis A. Harrison, was qualified as an expert witness on the valuation of a department store property. Mr. Harrison is 51 years of age, graduated from Pennsylvania State College, class of 1918, as a civil engineer. He has been in the real estate business since 1920. During that time he has been buying and selling real estate in Philadelphia and has done appraisal work. He has testified as an appraiser of real estate before Common Pleas, Orphans' and Municipal Courts of Philadelphia, and the Federal Courts. He was the first president and founder of the Society of Residential Appraisers of Philadelphia. He is a member of the Real Estate Board of Philadelphia and a number of other real estate bodies. He has testified for the United States Government, the Navy Department and numerous other governmental and private organizations. He has appraised department stores, such as Lit's, Gimbel Brothers and Strawbridge and Clothier, and has given testimony in court in regard to the said appraisements. He has appeared many times before this court and was *Page 649 
known to the trial judge as an experienced and reliable real estate expert. The testimony which Mr. Harrison gave in this case also attests to his qualifications. There was no merit in this exception and the trial judge's decision was proper. The trial judge is the one to pass upon the qualifications of an expert witness.
Exceptions Nos. 12, 14, 15 and 16 relate to the exclusion of evidence of values of central city real estate in general in past periods, viz.: "late 1920's", 1927, 1928, etc. We find no merit in these exceptions. The record indicates that counsel for appellant was granted a wide latitude in his examination of the assessor as to assessments of other buildings in various parts of the city, but did not prove proper bases of comparison of these other buildings with the Wanamaker building. The evidence of central real estate value in general at remote periods would serve no useful purpose in the present inquiry and was not relevant to the question as to the actual value of the property in the fall of 1946. It is obvious that the court is not called upon in this proceeding to ascertain the description and actual values at various times for approximately the past three decades of the thousands of properties in central Philadelphia.
Appellant called the assessor to the witness stand for cross-examination as to how he arrived at his assessment. He was not an expert witness. After he had been examined at some length as to the 1946 assessment of Gimbel's store at Ninth and Chestnut Streets, counsel announced that he proposed to ask the assessments of five or six other stores and the trial judge sustained an objection to any further questions along this line until it was shown that the store buildings were comparable with Wanamaker's store (N. T., p. 23). This action is the subject of appellant's exception No. 11. We are of the opinion the trial judge exercised proper discretion in sustaining the objection. The assessor was also asked by counsel for appellant whether a square foot value of $4.10 in an assessment of the Wanamaker building *Page 650 
for an unnamed previous year was "cost less depreciation". The assessor did not make the prior assessment and it was made before he was the assessor for the district in which the building is located. He was appointed the assessor for the district in the spring of 1946. The appellee's exception was sustained by the trial judge (N. T., p. 29). This is the subject of appellant's exception No. 13. We find no error in this ruling. The assessor was not competent to testify as to how some unnamed person at an unnamed past period calculated the per square foot value of the building.
In our opinion the appellant failed to show by the weight of the credible evidence that the assessment was not made on a just and proper legal basis and all of its exceptions to the adjudication are without merit. We are further of the opinion from all the evidence adduced in this case that the actual or fair market value of the Wanamaker Store property for purposes of taxation for the year 1947 was and is $19,705,300. Property owner appealed to Supreme Court.
The decree of the court below is affirmed on the opinion of Judge MILNER. Costs to be paid by the appellant.
 *Page 1