47 N.J. Super. 571 (1957)
136 A.2d 666
JAT COMPANY, INC., A CORPORATION OF NEW JERSEY; ADOLPH ZUCKERBERG, PLAINTIFFS-APPELLANTS,
v.
DIVISION OF TAX APPEALS OF THE STATE OF NEW JERSEY AND TOWNSHIP OF SADDLE BROOK (FORMERLY TOWNSHIP OF SADDLE RIVER), A MUNICIPAL CORP. OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1957.
Decided November 29, 1957.
*575 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Ralph W. Chandless argued the cause for plaintiffs-appellants (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Charles L. Bertini argued the cause for defendant-respondent Township of Saddle Brook (Mr. Guy W. Calissi, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This appeal raises the question of the correctness of judgments of the State Division of Tax Appeals fixing assessments for taxation of six parcels of real property in the Township of Saddle Brook (formerly Saddle River) for the tax years 1954 and 1955. Two of the parcels are owned by appellant Jat Company, Inc., and the *576 other four by appellant Zuckerberg. The Bergen County Board of Taxation had, on appeal, granted the taxpayers substantial reductions from the assessments, apparently on the theory of discriminatory assessment. The reductions were wholly reversed by the State Division as to some of the parcels and modified as to others. On the present appeals the taxpayers press the contention that they proved a case of discriminatory assessment before both the county and state tax agencies, within the decisions in Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329 (1954), and Gibraltar Corrugated Paper Co. v. North Bergen Township, 20 N.J. 213 (1955), and that the revision of the county board judgments by the State Division was erroneous.
A brief description of the properties involved will be useful. Lot 1, Block 157 (4 acres) and Lot 4, Block 153 (2.74 acres) abut each other, north-south, being on the west side of North Midland Avenue and bounded by a railroad right of way on the west. On Lot 1 there is a store building. The other lot is vacant. These properties are zoned industrial, but there is a small tract developed with residences immediately south of Lot 4. The other properties under appeal all lie east of North Midland Avenue, the nearest to that thoroughfare being Lot 1, Block 154 (3.49 acres), the next, Lot 2, Block 154 (21.96 acres), and then Lot 3, Block 154 (21.65 acres). A slaughterhouse business has been conducted on Lot 2 for many years. The other lots mentioned are vacant land. Lot 1 is zoned industrial, Lots 2 and 3 residential. Skirting these lots on the south and traversing part of Lots 3 and 2 is the Garden State Parkway, according to the Township Zoning Map in evidence. The last parcel involved is Lot 1, Block 159 (19.18 acres), directly north of Lot 2, Block 154, zoned residential and apparently adjacent to a school and developed residential area. This is also vacant land.
A witness for the taxpayers testified that prior to the making of the 1954 assessments, the Township of Saddle Brook made a general revaluation study of taxable property *577 in the municipality and that this resulted in assessment increases for that tax year over the tax year 1953 of from $10 to $300 as to 2,200 assessed parcels and from $2,000 to $40,000 as to 50 parcels, the remaining 700 assessed properties being either reduced or left unchanged. The 50 properties mentioned absorbed an aggregate increase of $400,000 of the total net increase of all ratables of $550,000. The properties involved in the present case are said to fall in this class of 50. The same witness, William J. Schwenn, a real estate valuation expert, further testified that he had made a general study of the relationship of assessed valuations to true value of property in Saddle Brook as of prior to the tax year 1954, based upon his analysis of 400 sales of residential property, and that this disclosed that "these residential properties were assessed approximately 20% of true value." From this premise the witness gave it as his conclusion that there was a general assessing standard of 20% of true value in use by the assessors of the municipality prior to 1954; and that this standard continued in 1954 and 1955 except as to the properties involved in this appeal and a few others. It was his own opinion that the subject properties had been assessed at 20% of true value prior to 1954. Taxpayers consequently argue that the increases in their assessments (applied in the tax year 1955 as well as 1954) are discriminatory and that the reductions granted by the county tax board, which were almost to the level of the 1953 figures, should have been affirmed. Schwenn gave his expert appraisal as to the true value of each of the properties as of the assessing dates for the tax years in question, and it is clear that application of a 20% ratio thereto would produce a figure in each case except one substantially in accord with the reduced assessments fixed by the county tax board. It is equally clear, however, that such figures would generally have exceeded the 1953 assessments (see table, infra).
The municipality, which had appealed the county board judgments, offered the testimony of a real estate expert, Charles Raia, as to the true value of the properties involved. *578 His valuations were generally substantially in excess of the true value appraisals given by Mr. Schwenn. The municipality offered no testimony concerning the method by which these properties, or property in the township generally, was assessed in either of the years in question or for prior years.
After hearing the evidence, a two-member panel of the Division of Tax Appeals filed a report, which was adopted as a basis for judgments by the Division, in which the following conclusions were arrived at: (1) it was not shown that Saddle Brook assessments as of prior to 1954 were generally fixed by the assessors at a uniform standard of 20% of true value; (2) that nevertheless, despite the absence of a showing of "direct or deliberate discrimination," the Division would apply to the true value of the properties what it referred to as "the common level." This was a misnomer, since it appears that by this it meant the average ratio which aggregate assessed valuations bore to aggregate true value of all property assessed. It decided to use for this purpose the average ratios which the Division had itself arrived at on review in other proceedings of the Bergen County Equalization Tables for the years 1954 and 1955, being, respectively, 21.8% and 20.2%. It then proceeded to make a determination of the true value of the respective properties, which it considered to be the same, as to each parcel, for both of the tax years in question. This was done upon an analysis of the appraisals and supporting testimony of the opposing experts and the placing thereon of the probative weight deemed deserved. To the true value determinations thus found the panel then applied the ratios mentioned and entered the resulting figures in each case as the recommended judgments, except where any such figure would exceed the amount of the assessment. These recommendations were the basis of the judgments under appeal. The appended table will show, for each of the properties in litigation, the 1953 and 1954 assessments, the judgments of the county board and of the State Division, and the true value appraisals of the experts. All 1954 figures apply also to the year 1955, except where otherwise specifically indicated.

*579
 Lot 1953 Ass't. 1954 Ass't.
Lot 4, Bl. 153 $825 $6,436
Lot 2, Bl. 154 6,173-12,840(I[**]) 17,850-30,150(I)
Lot 3, Bl. 154 4,400 8,640
Lot 1, Bl. 159 3,500 10,055
Lot 1, Bl. 154 1,050 4,560
Lot 1, Bl. 157 1,600-1,300(I) 8,800-3,000(I)
 Lot 1954 Co. Bd. 1954 St. Bd.
Lot 4, Bl. 153 $1,025 $3,086
 (2,767-'55[*])
Lot 2, Bl. 154 7,700-16,000(I) 16,786-17,483(I)
 (15,554-16,200-'55)
Lot 3, Bl. 154 5,500 8,640
Lot 1, Bl. 159 4,400 10,055
Lot 1, Bl. 154 1,300 3,811
 (3,531-'55)
Lot 1, Bl. 157 2,000-1,700(I) 4,360-3,000(I)
 (4,040-'55)
 Lot Schwenn Raia
Lot 4, Bl. 153 $5,480 $19,100
Lot 2, Bl. 154 37,400-80,200(I) 110,000-197,000(I)
Lot 3, Bl. 154 27,500 86,500
Lot 1, Bl. 159 22,800 95,900
Lot 1, Bl. 154 7,000 24,000
Lot 1, Bl. 157 10,000-18,400(I) 28,000-11,900(I)

*580 I.
It is to be noted that the municipality has not appealed from the judgments entered by the Division of Tax Appeals. Since the Division entered judgments based upon ratios substantially the same as that which the taxpayers contend was the common level applied in Saddle Brook to property other than theirs, it does not appear that they have any remaining grievance, even assuming their claim of first-instance discrimination is otherwise well founded, except to the extent that they may have any quarrel with the true value determinations arrived at by the Division as a preliminary basis for application of the average ratios. The merits of the true value determinations do not seem seriously questioned by the taxpayers in the points of argument stated in their brief, nor was this question stressed in the oral argument. There is, however, mention in the Statement of Questions Involved of alleged deficiency in the appraisals of the municipal expert because of absence of reliance upon sales of comparable property. We have examined the panel report and find that the valuation testimony of both experts was given critical study before use as a basis for the valuation determinations in the report, and we find no persuasive showing of error in the valuations determined by the panel, insofar as true value may be material in this case. Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 104 (1952).
Since, moreover, the taxpayers are not entitled, even from a discrimination standpoint, to anything more than the application of a supposedly commonly applied assessment ratio to the true value of their property, rather than to their own expert's private opinion of such value, and the Division has, in effect, done this by the application of the ratios mentioned to the Division's determinations of true value, there would appear to be no material basis to the grievance purportedly sought to be vindicated by this appeal and no prejudice in the rejection by the Division of the contentions of taxpayers as to discrimination.

*581 II.
We prefer not to rest an affirmance of the judgments under appeal on the point developed in I, supra, as the application of the "average" ratios by the Division to true value was improper, even though the taxing district has not appealed therefrom. North Bergen Township v. Venino, 45 N.J. Super. 143 (App. Div. 1957). As was pointed out by Judge (now Mr. Justice) Francis in that case (45 N.J. Super. at page 147), "the average ratio achieved in the statutory equalization process is the arithmetical mean of the varying percentages of true value applied by the local assessor in assessing properties in the taxing district." Such a ratio is distinctly not to be equated with a "common ratio" properly understood, which signifies that "the same standard or percentage of value is used in assessing each property in the district" (emphasis supplied), ibid.; and see Switz v. Middletown Township, 23 N.J. 580, 595 (1957). The Division is not at liberty, in any case, as the law now stands, to enter judgments at percentages of true value based upon "average ratios" of assessment, where there is nothing more to support the case for discrimination than the determination of such a ratio, no matter by whom established. North Bergen Township v. Venino, supra.
The inquiry next suggests itself as to whether any showing of discrimination in the legally significant sense was developed by the proofs of the taxpayers which were submitted before the Division for that purpose. Before considering the proofs it is well to be reminded that the authorities thus far have enunciated two requirements for such a showing: (a) that the assessing authorities are applying a common or general standard of valuation in the general administration of their assessing function, whether that standard is pursuant to or in violation of any statute, and (b) that one or a relatively few taxpayers are being systematically or intentionally singled out for subjection to a more burdensome assessment standard than that being generally administered. See Delaware L. & W.R.R. Co. v. *582 Neeld, 23 N.J. 561, 570 (1957); Baldwin Construction Co. v. Essex County Board of Taxation, supra (16 N.J., at pages 338, 340-342); Gibraltar Corrugated Paper Co. v. North Bergen Township, supra (20 N.J. at page 219); Jersey City v. Division of Tax Appeals, 5 N.J. Super. 375, 384 (App. Div. 1949). affirmed 5 N.J. 433 (1950). In the Baldwin case (16 N.J. at pages 340, 341) and in the Delaware L. & W.R.R. Co. case (23 N.J. at pages 569-571), the court announced that the New Jersey constitutional requirement for taxation of all real property assessed for the support of local government "according to the same standard of value," Article VIII, Section I, paragraph 1, implied the dominant principle of "equality of treatment and burden"; that this provision constitutes the New Jersey State sanction against discriminatory assessment; and that the principle stated is essentially the same requirement as is enforced against the states by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, applied in such cases as Hillsborough Township v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923). We ought not to leave without note in this context that the 1947 New Jersey constitutional provision is effective to prohibit legislation which would prescribe different standards for assessment of real property taxed for the support of local government, and was adopted primarily with that object in mind, 1 Convention Proceedings, Record, pp. 773 et seq., whereas the Equal Protection Clause is aimed at discriminatory action by the states, whether by statute or administrative action.
If either of the two aforestated requirements is absent in a particular case, there is no factual basis for a contention of discrimination in the legally significant sense. A failure of proof as to the first requirement is clearly manifested in the case for discrimination attempted to be constructed *583 by the present taxpayers. Perusal of the entirety of the testimony of their witness, Schwenn, indicates that the 20% ratio which he implied was one of general application in the taxing district was, in fact, the witness' computation of an average ratio, since he mentioned that particular sales prices showed assessment ratios running as low, in some cases as 17%, 15%, and 4%, and as high as 180%. This is the same kind of average ratio as was referred to above as in use for county equalization purposes and which recently has been required by law to be formulated by the State Division of Taxation in connection with the State School Aid Law. There being no other pertinent proof in the record, there was no basis for the Division, and there is none for us, to find the existence either prior or subsequent to October 1, 1953 of any particular commonly applied standard of value for the assessment of property in Saddle Brook. The references in the proofs to an assessment revaluation in 1954 suggest the possibility that a common standard was begun to be applied uniformly at that time, but there is no definite proof in this record indicative thereof or as to what any such standard might have been. If, as may be, it was 20% of true value, we have already noted that appellants have been substantially accorded the benefit of it by the judgments here under review.
Nor do we find satisfaction by the taxpayers of the second requirement for a discrimination case, i.e., proof of the direction of a systematic or intentional scheme of discrimination against their properties. They attempt a demonstration of what they denominate "discrimination" by pointing out that in effecting the 1954 assessment increases it resulted that Lot 4, Block 153, was being assessed at $11.50 per front foot, while the next three properties adjoining southerly were assessed at rates of $2.25, $4 and $6 per front foot, respectively. But the tax map shows that while Lot 4, Block 153, is a 2.74-acre parcel with a street frontage of 556 feet and depths of 170 feet and 260 feet, with all the depth and assemblage advantages normally accruing to an industrial location of that size, the compared adjoining *584 parcels are small dwelling plots with frontages of 40, 50 and 100 feet, respectively, and depths of 100 feet. It is obvious that these are not comparable properties. In any event, the Division judgment reduced the assessment of Lot 4, Block 153, by more than 50%, so that there is not now even a colorable showing of discrimination in the comparison.
Taxpayers undertook demonstration of another instance of the same kind by noting that the increased assessment of Lot 1, Block 157, left it at a front foot rate of $15.50, whereas the adjoining property on the north was assessed at $8 per front foot. But here, again, note the contrast between the 4-acre area of the parcel under appeal (adjoining on the north the parcel discussed in the preceding paragraph), having dimensions of 568' by 260', and the .58-acre piece compared with it, having a frontage of only 132 feet. Consider, moreover, that Lot 1, Block 157, was also reduced in assessment by the Division judgment by one half, thereby eliminating any vestige of a claim of disparate assessment ratios.
It must, furthermore, be kept in mind that a showing of spot disparity in apparent assessment valuation rates, limited to isolated or relatively small area pockets, is far from establishing such discrimination as would justify a tax board or court, under the principles stated above, in reducing the parcel assessed commensurately higher. So soft a concept would soon lead to administrative chaos in the attainment of practical assessment uniformity and would tend to frustrate the long-range aim of reasonably consistent adherence by assessors to whatever the legal valuation standard of assessment may be ordained to be as of any particular time. See Switz v. Middletown Township, supra, passim. It was not held in the Baldwin case, supra, as implied by appellants, that the assessment of a particular property should be reduced for no other reason than an apparent relative disparity with the assessment of an adjacent or nearby parcel. It was there expressly found as a fact that there was a common ratio of value applied in East Orange generally, *585 and that the revision action of the county tax board invalidated as discriminatory in that case was confined to properties in a geographical area arbitrarily fixed by the board, thus deliberately subjecting those properties to a higher relative burden than that which had previously been generally administered throughout the taxing district. (16 N.J., at page 338).
We are not implying that there are any necessarily predetermined or absolute criteria as to the required territorial extent of either the favored or the discriminated against properties in order to justify grant of relief in a particular discrimination case. The broad outlines of the requirements for a successful showing have been drawn by our Supreme Court in the cases cited and they will undoubtedly be applied with reasonable flexibility. They are not met by the proofs in the case before us.
In evaluating the proofs before us we have regard for the caveat that: "mathematical precision in the valuation of property for taxation is not requisite, nor is it attainable. Absolute equality is impractical." Delaware L. & W.R.R. Co. v. Neeld, supra (23 N.J., at page 570). "Protection against intentional systematic discrimination" is the objective of the particular sanction against illegal taxation which is commonly known as a discrimination appeal. Ibid. It has been repeatedly held that the equal protection clause is not designed to cure "inequality in taxation which results from mere mistake or error in judgment of tax officials." Charleston Federal Savings & Loan Ass'n. v. Alderson, 324 U.S. 182, 190, 65 S.Ct. 624, 89 L.Ed. 857 (1945), and cases there cited. Cf. Hudson & Manhattan R.R. Co. v. City of Jersey City, 6 N.J. Super. 333, 338, 339 (App. Div. 1950), affirmed 5 N.J. 434 (1950). We may add that it is equally inefficacious to repair the anarchic situation unfortunately present in too many taxing districts under which property is assessed not only without regard to existing statutory standards but without relation to any known or ascertainable standard other than the assessor's esoteric concept of what is expedient. Remedies for those kinds of *586 assessment shortcomings must continue to be sought in better administration of the assessment process; in judicial or quasi-judicial compulsion of adherence by assessors in particular cases to the statutory standards ordained for assessment; and in legislative attention to standards which appear from experience to be impracticable. Switz v. Middletown Township, supra, passim.

III.
Certain procedural objections to the action of the Division are advanced. It is contended, first, that the petitions of appeal of the taxing district fail to vest jurisdiction in the Division, as they request an increase of the assessments to true value, whereas the successful appeal of the taxpayers to the county board was for relief for discrimination. See Cleff Realty Co. v. Jersey City, 41 N.J. Super. 465 (App. Div. 1956). In the cited case it was held that where a taxpayer's appeal to a county board is confined to a claim of assessment above true value, there is no jurisdiction in the State Division, upon the further prosecution of the appeal to that body, to consider a claim of discrimination. In the present case there was no violation of that principle. The demand in the taxing district's petitions of appeal for a restoration of true value was consistent with a legal assault upon the grant of relief by the county board based upon discrimination. The State Division found that the case for discrimination, upon which the county board judgments were apparently based, was not established by the proofs adduced before it. That the Division did not thereupon restore the assessments in full but gave the taxpayers the benefit of application of average ratios to true value, as determined from the valuation proofs, was to the benefit of the taxpayers, and cannot be a cause for complaint by them on this appeal.
It is further contended that the burden of proof rested upon the municipality to overcome, in the Division, the presumption of correctness attending the action of the *587 county board, and that the appellant municipality failed to submit proofs having that effect before the Division. North Bergen Township v. Dieckmann's Estate, 37 N.J. Super. 221, 223 (App. Div. 1955). Cf. Aetna Life Insurance Co. v. City of Newark, supra. It may perhaps be questioned whether the rule relied upon is appropriately applicable in a case where so serious a departure from ordinary assessing practice as unconstitutional discrimination is the issue presented to and decided by the county board, particularly where, as here and customarily, that tribunal files no findings of fact or conclusions of law and there is no record of the evidence before it. But we need not determine the point in the present case. It was conceded at the argument that the taxpayers' case before the county board consisted of testimony by the same witness and presumably of the same import as shown in the record made before the State Division. The Division, and this court, are thus apprised of what the basis for the county board judgments consisted of. The entire factual situation deemed by taxpayers pertinent to a resolution of the meritorious issue is here laid bare. The presumption always is that the actions of assessing officials are correct and free from invidious discrimination. Jersey City v. Division of Tax Appeals, supra (5 N.J. Super., at page 384). It would not serve the interests of justice to sustain the county board determination of illegal discrimination when the evidence in the record before us, all that the complaining taxpayers are able to muster, fails to show it by the remotest approximation of what the rule requires.
Moreover, it does not appear that taxpayers addressed any motion at the hearing before the State Division to the insufficiency of the proofs of the taxing district before going on with their own proofs.
Affirmed.
NOTES
[*] Note: "'55" refers to 1955 judgment.
[**] Note: "I" refers to assessment on improvement.