Buerger et ux., Appellants, *v.* Allegheny County
Board of Property Assessment, Appeals
and Review.

Argued April 14, 1958. Before RHODES, P. J., HIRT,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS,
JJ.

562

*W. Gregg Kerr, Jr.*, with him *Eckert, Seamans & Cherin*, and *Smith, Buchanan, Ingersoll, Rodewald & Eckert*, for appellants.

*Joseph J. Ridge*, Assistant County Solicitor, with him *John F. Murphy*, Assistant County Solicitor, and *Maurice Louik*, County Solicitor, for appellee.

OPINION BY WOODSIDE, J., March 18, 1959:

The appellant, David B. Buerger, owns real estate in Hampton Township, Allegheny County, which was assessed at $8200 for the triennial 1956, 1957, and 1958. Buerger appealed from this assessment to the Board of Property Assessment, Appeals and Review of Allegheny County, which reduced the assessment to $7900. From the board's assessment, he appealed to the County Court of Allegheny County alleging that the assessment was in excess of the fair market value of the property and that it did not comply with the constitutional and statutory requirements of uniformity. After hearing, the court entered a decree dismissing the appeal. From that decree he appealed to this Court.

At the hearing before the lower court, the board offered in evidence the certified transcript of the assessment which was as follows: 37 acres of land at $4,700, a two-story frame house at $2,400, and a kitchen at $200, a garage and grain house at $200, two chicken houses at $100, and a frame barn at $300. Upon admission of this transcript into evidence, the board rested. This was proper procedure. There is a presumption that the assessment was the fair market value of the property. The burden is upon the appellant to prove that the valuation was excessive, or unjust, inequitable or not uniform in comparison with other real estate in the district. *John Wanamaker, Phila-*

*delphia, Appeal,* 360 Pa. 638, 63 A. 2d 349 (1949);
*Park Drive Manor, Inc. Tax Assessment Case,* 380 Pa.
134, 136, 110 A. 2d 392 (1955).

Buerger then testified that in his opinion the actual value of his property was less than the assessment. After eliciting from Buerger that his opinion of the total market value of the property on January 1, 1956, was $4,700, his counsel offered to prove the assessed valuation of four properties in the neighborhood of the Buerger property. He offered to prove that although the assessment was substantially the same as the Buerger property, these four properties had a greater value. The county solicitor objected to this offer on the grounds that it was incompetent, immaterial and irrelevant.

The objection was sustained, and the court rejected every subsequent attempt on the part of the appellant to prove these assessments, to describe the premises and to present evidence of their market value. At times the trial judge indicated that the offers were refused because the witness was not qualified or because the offer was made during the cross-examination of the board's witnesses. The record clearly shows, however, that the trial judge supported the county solicitor's contention made both then and now that "any introduction of any evaluation of any particular piece of property," was irrelevant and inadmissible.

After the appellant rested, the board called a subassessor of Allegheny County who testified that he assessed the Buerger property after comparing it with adjacent land and "hundreds of records" and that the assessment "represented the fair value of the property as of January 1, 1956."

The county solicitor then called a member of the board who, after testifying that Buerger's property was assessed at $7900, was examined as follows: "What

is your standard? A. Fair market value. Q. Is that a 100%, 40% or what? A. It is a hundred percent."

When the appellant's counsel attempted to cross-examine these witnesses there were so many objections and interruptions by both counsel and court that for all practical purposes he had *no* opportunity to clarify their testimony or to test their credibility.

The Act of May 22, 1933, P. L. 853, §402, 72 PS §5020-402 provides: "It shall be the duty of the several elected and appointed assessors, . . . to assess, rate and value all objects of taxation, . . . according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell . . ."

This section imposes a duty upon assessors to determine valuation on the basis of actual value. "Actual value" has been held to mean market value: *Park Drive Manor, Inc. Tax Assessment Case,* supra, 380 Pa. 134, 110 A. 2d 392 (1955); *Flamingo Apartments, Inc. v. Board of Revision of Taxes,* 383 Pa. 223, 118 A. 2d 197 (1955). "Market value" has been defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Lehigh & Wilkes-Barre Coal Company's Assessment,* 298 Pa. 294, 300, 148 A. 301 (1929).

It is a common knowledge, however, that real estate frequently is not appraised at actual or market value and that there is a wide discrepancy between the ratio of assessed value to actual value not only in different governmental units, but often-times within the same unit.

Article IX, section 1 of the Pennsylvania Constitution provides that "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the taxes."

Where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. *Brooks Building Tax Assessment Case*, 391 Pa. 94, 101, 137 A. 2d 273 (1958); *Union Supply Co. Tax Assessment Case*, 160 Pa. Superior Ct. 162, 164, 50 A. 2d 546 (1947).

Unless the taxpayer's constitutional right to uniformity is to be completely denied him, the courts must leave open to him some practical way to establish lack of uniformity in assessments.

The appellant attempted to show lack of uniformity by offering to prove the value of four similar adjoining properties and to show that the assessment on his property exceeded the assessment on these other properties since they were actually more valuable. The lower court refused to permit him to present the required proof, and in this the court erred.

As was stated in *John Wanamaker, Philadelphia Appeal,* supra, 360 Pa. 638, 642, 646, 647, 63 A. 2d 349 (1949) : "The burden was upon the [property owner] to show by the weight of the credible evidence that the valuation by the Board of Revision of Taxes was not on a proper legal basis, in that it was excessive, or unjust, inequitable or not uniform in comparison with other [similar] real estate in the district."

Mr. Justice BELL, in *Brooks Building Tax Assessment Case,* supra, 391 Pa. 94, 101, 137 A. 2d 273 (1958) states as follows: "The taxpayer has satisfied his burden of proof by evidence of the market value of his property and of similar properties of the same nature in the neighborhood and by proving the assessments of each of these properties and the ratio of assessed value to actual or market value. The City's first contention that appellant's assessment cannot be changed

unless it exceeds the market value is utterly devoid of merit. The City's second contention that appellant's assessment cannot be changed and reduced unless he proves that a uniform ratio of assessed value to actual value has been applied generally throughout the entire district is likewise erroneous."

Evidence of the assessed valuation and the fair market value of other real estate similar to the appellant's property should have been received. *Union Supply Co. Tax Assessment Case, supra,* 160 Pa. Superior Ct. 162, 164, 50 A. 2d 546 (1947).

Furthermore, the cross-examination of the taxing officials concerning uniformity was unreasonably restricted. Assessors do not testify as experts, and their testimony can be relied upon by the courts even though they may lack technical knowledge concerning the valuation of real estate. *John Wanamaker, Philadelphia Appeal, supra,* 360 Pa. 638, 646, 647, 63 A. 2d 349 (1949). This does not mean, however, that the appellant can be denied reasonable opportunity to test their knowledge of property values and of the assessments for which they are responsible. That they need not be qualified as experts is all the more reason why cross-examination of them should not be unduly restricted.

Evidence should point the way to the truth, and generally speaking that which aids in the determination of the truth should be admitted. To determine the question of uniformity it is important to know the ratio of the assessed valuation of real estate in the township to actual market value of the real estate. This can be ascertained in different ways. The assessor may admit that assessments throughout the area are made at a reduced percentage of actual market value. But if the assessor does not do this, the door must be left open to establish it by some other

evidence. One of the methods is that attempted by the appellant in this case. Fair market value of real estate, a fact necessary to the determination of the ratio, is not a matter of mathematical accuracy, and opinions of such value by experts differ widely. *Hammermill Paper Co. v. Erie*, 372 Pa. 85, 95, 97, 92 A. 2d 422 (1952).

The legislature has established a board whose duty it is to determine the ratio of assessed value to actual value. It approaches the problem scientifically, and with far more complete and accurate information than would be practical, if indeed possible, to produce in a court trial. Any student of government—any scientist —any businessman with knowledge of the procedures would accept the State Tax Equalization Board's determination of the ratio of actual value to assessed value in a district, as more nearly accurate than the opinion of the local assessor or any real estate appraiser. Must those of us whose business is the determination of facts continue to follow the cow paths toward the goal of truth when there is available a modern turnpike leading to that goal?

No effort was made in this case to establish from the records of the State Tax Equalization Board what the ratio in Hampton Township, Allegheny County was in 1955. (Even though the assessors testified the real estate was assessed at 100% of market value in 1955, the official public reports of the state board show that the ratio as found by it was 43.3% and that in 1956 it was 48%, and 1957 it was 47.2%). It may be that there is some compelling reason why the courts should not be allowed to consider the figures of the State Tax Equalization Board. Possibly in the Act of June 27, 1947, P.L. 1046, which created the state board, the legislature has indicated by section 17, 72 PS §4656.17, an intent that the courts should not use

the information collected and co-ordinated for the determination of the very fact here in issue. The board collects the information for an entirely different purpose, but facts are facts for whatever purpose they are used. If the records of the state board were admissible, they should not properly be considered as conclusive, but they certainly would have probative value. The courts should not fear *new* methods of determining the truth when it is clear that such methods would present a greater opportunity of finding it.

As no reference either in the record or briefs has been made to the State Tax Equaliziation Board or the facts collected and analyzed by it, what is here said concerning the findings of that board was in no way determinative of our remanding of the case, nor is what we have said here to be considered as a directive to the trial judge to admit such evidence were it to be offered. It does seem *to us*, however, that *to* ignore such complete and valuable information bearing so directly upon the issue sought to be adjudicated and to resort instead to some other more lengthy and less reliable evidence is a governmental waste which either the courts or the legislature should eliminate.

The court erred in refusing to permit the appellant to introduce the assessment records of similar properties in the neighborhood and to describe those properties and to present expert testimony by a qualified witness as to their value. The court also erred in unduly restricting the cross-examination of the board's witnesses.

A consideration of the cases here cited, and many others, convinces us that in none has the court restricted the admission of evidence and the scope of the cross-examination of witnesses to the extent that the trial judge did in this case.

Order reversed and appeal reinstated.