BAKEN PARK, INC., Appellant v. COUNTY OF

PENNINGTON, Respondent

(109 N.W.2d 898)

(File No. 9848. Opinion filed June 12, 1961)

**Bottum & Beal,** Rapid City, for Appellant.

**James H. Wilson,** States Atty., Rapid City, for Respondent.

BIEGELMEIER, J. ▉ Appellant is the owner of a tract of land in Rapid City about two miles from the downtown shopping area upon which a shopping center named Baken Park is located. The city assessor fixed the value of the real estate at $495,860 for 1958; by appeal it reached the circuit court which found that value in excess of full and true value and determined it to be $333,000. Appellant agrees this value to be within the range of evidence before the trial court, and bases its appeal on the ground discrimination exists as the value determined by the trial court is the full, true or 100% value; that other similar property is assessed at 65.62% of such value and when the 60% factor for tax purposes is applied as directed by SDC 1960 Supp. 57.0334, it will pay taxes on 60% of value while other similar property will pay taxes on 39.37% of value; that taxes levied thereon would not be uniform as required by the state constitution. In support of this feature of its claim, appellant offered certain exhibits in evidence, which respondent stipulated were correct, but objected to on other grounds. While the trial court reserved a ruling, it considered and included some of the evidence in these exhibits in the findings of fact. In response to the appellant's claim of error in not admitting the exhibits, respondent states appellant is estopped to base error on this point because the court impliedly ruled in its favor by its conduct including them in its findings. They will be presumed to have been received in evidence. These exhibits are compiled in an appendix to appellant's brief and indicate that the assessor had fixed a value of $3,779,150 for nearly 300 downtown business lots of a market value of $5,789,000. Appellant computes the assessor's value as 65.62% of the market value; that taking 60% of this as provided by SDC 1960 Supp. 57.0334 results in the downtown business lots having a value for tax purposes of

39.37%. The trial court's Finding V in effect approves these figures. Both of these percentage figures are in conformity with the testimony of the County Director of Equalization that the assessed value of business lots in Rapid City for 1958 was some 42% of true values. Respondent attempts to discount his testimony for the reason he had made only a few ratio studies (See Hansen v. Wilder, 76 S.D. 438, 80 N.W.2d 306); however, the State Division of Taxation made a separate ratio study and the County Director in a report to the Pennington County Board of Equalization advised it of the 42% figure. The trial court took cognizance of this disparity in Findings of Fact V and VI:

> "That there is a discrimination made by the City Assessor in fixing the appraised value of various and different tracts of land in Rapid City, South Dakota, but there is no consistency from which there can be determined a general tendency to assess at any certain percentage of full and true value, as is illustrated by evidence showing that of 278 business lots in the City of Rapid City, the value set by the Assessor on the land alone before applying the 60% factor varied from 131% of full and true value to 13.3% of full and true value, as shown by competent undisputed evidence.

> "That the evidence fails to show that any general percentage of full and true value was applied to any substantial number of the lots or tracts of land within the City of Rapid City, or that similar or comparable lots, tracts, or parcels of land were generally valued for assessment purposes at any consistent or near consistent percentage of full and true value."

Respondent county concedes, as indeed it must from the record and court findings, that a comparison between the 278 lots in the downtown business area and lots in the outlying business area similar to appellant's property, indicates that the downtown area is apparently being favor-

ed by taxing authorities; that these outlying business properties are "carrying their full share of the tax load" and the "arithmetical median in the downtown business group falls in the 65% group", that median "in the outlying business area (which includes appellant) falls in the 100% group". It argues, however, if appellant were to be granted relief, and leave the other outlying lots assessed at 100% of their value, there would be manifestly an unfair result. The answer to this is only the Baken Park property is involved in this proceeding and a court cannot deny relief to one who is vigilant because others sleep on their rights and waive their objections by failing to appeal. Williams v. Stanley County, 69 S.D. 118, 123, 7 N.W.2d 148, 151. Indicative of its importance, the uniformity and equality of taxation required by law is preferred over the standard of true value, when both cannot be secured. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979. In Chicago, R. I. & P. Ry. Co. v. Young, 60 S.D. 291, 244 N.W. 370, 372, this court wrote:

> "Where the unlawful discrimination results from valuing the property of one taxpayer proportionately higher than that of others, the rate levied against all being the same, the remedy almost universally given to the taxpayer against whom the discrimination exists is to reduce his valuation to the same percentage of true value used in the case of those in whose favor the discrimination was granted and compute his tax accordingly."

Respondent quotes and agrees with this language but claims that it is impossible to ascertain from the evidence the percentage of the full and true value used by the assessing authorities for "taxpayers not discriminated against". The record and findings show discrimination existed between the valuations of downtown business lots and the Baken real estate; that, as heretofore set out, the value for tax purposes on the former was about 40% of its true value and the latter 60% thereof. The result was discrimination

and lack of uniformity required by Art. XI, § 2 of the Constitution which provides "* * * Taxes shall be uniform on all property of the same class. * * *". The evidence introduced related to similar property, that is, real estate used for business purposes. The vice of the situation is in compelling one taxpayer to pay more than his proper proportion of the total tax as compared with others similarly situated. Chicago, R. I. & P. Ry. Co. v. Young, supra. We note in passing that SDC 57.0406 cited by respondent and dealing with the powers of the county board of equalization then included the requirement of "gross" inequality to mean the assessing at a "much" higher amount than "adjoining" property; it was amended in 1957 by omitting the quoted words. Respondent's argument based on these now absent requirements of the former statute does not apply to the present controversy.

■ Under SDC 57.0401, as amended by Ch. 459, Laws of 1953, it is the duty of the local board to see that all taxable property "has been duly valued by the assessor". Ch. 475, Laws of 1953, now SDC 1960 Supp. 57.-0406-1, grants independent authority to the board of county commissioners to make adjustments and reassessments and is not applicable here. In 1957, SDC 57.0406 was amended as noted above. Authority is there given to "correct * * * inequalities * * * within [an] assessment district", if the property is assessed at a higher or lower amount than other property "in the same assessment district." It further provides "No individual assessment shall be raised without notice in advance to such resident * * *". SDC 57.0409 states that a person may apply to the county board for the correction of any errors in the "valuation of his property * * * and the board may correct the same as shall be just." Surely the local board has authority to change the individual taxpayer's valuation and on appeal the county board has the same authority or an appeal would be an ineffectual and useless act.

Appeals from decisions of a county board of equalization to the circuit court are permitted by SDC 1960 Supp.

57.0411 and "shall be heard and conducted and determined as provided in SDC 12.0620". That section states in part "All appeals thus taken * * * shall be heard and determined de novo. The Circuit Court may make a final judgment and cause the same to be executed or may send the same back to the board of county commissioners with an order how to proceed * * *". The court has had occasion to consider tax assessment appeals in Williams v. Stanley County, supra; In re Robinson, 73 S.D. 580, 46 N.W.2d 908 and Sheraton-Midcontinent Corporation v. Pennington County, 77 S.D. 554, 95 N.W.2d 892. We see no reason to depart from them. Compare certiorari remedy problem considered in Central Cheese Co. v. City of Marshfield, Wis., 109 N.W.2d 75.

■ ■ If discrimination exists the remedy of the taxpayer is the reduction of his valuation to such amount as may be necessary to remove it. In re Appeals of Jepsen, 76 S.D. 421, 80 N.W.2d 76. This court has recognized that perfect uniformity of taxation is a dream unrealized and exact uniformity or mathematical accuracy in valuations are impossible, yet quoted with approval a statement to assess the property of one person or class at 40%, another at 30% and still another at 25% without legislation under appropriate constitutional authority to so classify was the result of deliberation or intention. Sioux Falls Savings Bank v. Minnehaha County, 29 S.D. 146, 165, 135 N.W. 689, 693. Constitutional uniformity is then lacking. Chicago, R. I. & P. Ry. Co. v. Young, 60 S.D. 291, 244 N.W. 370. The record here shows more than mathematical inaccuracy. It was not necessary to prove the basis used in assessing every other piece in the city. Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288; In re Brooks Building, 391 Pa. 94, 137 A.2d 273, this opinion quotes from Re Harleigh Realty Co.'s Case, 299 Pa. 385, 149 A. 653, one of the cases cited in the Young opinion, supra.

The issue as posed by the briefs is whether a taxpayer must show a common level, often referred to as a

common ratio, of assessment of all property (a general tendency to assess and general percentage were the terms used by the trial court) or an average ratio of a group of similar properties. The taxpayer admits that if it is entitled to relief from the discrimination only where it can show it was brought about by the use of the common ratio test, it is without a remedy. The county contending for the common ratio criterion cites Jat Co., Inc. v. Division of Tax Appeals, 47 N.J. Super. 571, 136 A.2d 666.

■ After oral argument In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 166 A.2d 763, came to our attention. This opinion discusses the problems involved including the delay in providing an effective remedy under prior New Jersey decisions. It has a familiar ring as this court in earlier opinions denied relief by injunction and mandamus. Sioux Falls Savings Bank v. Minnehaha County, supra; Beadle County v. Eveland, 43 S.D. 447, 180 N.W. 65. In the Kents case, the court decided proof of a common level or ratio was not required, stating the remedy must be within the practical reach of a taxpayer, that he must not be required to prove more than sensibly can be expected of him and until a better technique appears an average ratio could be used as evidence of a ratio at which an assessment above it should be reduced. Requiring proof of a common level or general percentage of true value would in many cases deprive a taxpayer of a remedy and cannot be sanctioned.

■ Appellant's showing justified relief from the discriminatory assessment. Cf. Cumberland Coal Co. v. Board, 284 U.S. 23, 52 S.Ct. 48, 50, 76 L.Ed. 146. There the court said:

"In Sioux City Bridge Co. v. Dakota County [260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340] * * * this Court, referring to the dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent. of the value of their property * * * and the rest of the class are inten-

tionally assessed at a lower percentage, stated the rule * * * (the 100% taxpayer) 'is to have his assessment reduced to the percentage of that value at which others are taxed.' "

■■ We come to the disposition to be made of this appeal and whether it should be reversed and remanded to the trial court to determine the exact average ratio on the present record from the "competent undisputed evidence" (Finding V) upon which appellant would be entitled to judgment or direct the entry of judgment by the trial court. It must be remembered that the jurisdiction of this court is strictly appellate and that it is without juridsiction to determine issues of fact or direct the decisions of trial courts, except when the facts are undisputed and are such that only one conclusion can be drawn therefrom, this court may direct entry of a judgment by the trial court. Somers v. Somers, 34 S.D. 594, 149 N.W. 558, 559. The record here shows the parties at issue on one point, the county contending for the common ratio and the taxpayer for the average ratio; the trial court finding that discrimination existed but that it was not a general tendency to assess at any certain percentage. These findings were based on the taxpayer's evidence of the assessed and true values on 278 lots described by the trial court as "competent undisputed evidence." We accept it here as such. The mathematical calculations of this evidence from the exhibits show the average ratio to be the 39.37% indicated earlier. Appellant in his brief, apparently willing to rely on the 42% figure of the Director of Equalization, has asked a remand with instruction to reduce the taxable value to 42% of the actual value found by the trial court. Respondent does not question the accuracy of the 39.37% figure, but argues only that the percentages are not shown to apply to properties adjoining taxpayer and appellant has failed to show a common level, which we have rejected.

Because the facts are undisputed and appellant is entitled to have the taxable value fixed as at least 42% of

the actual value and is willing to accept that reduction, we are inclined to accede to that request and the remittitur will so read. Prestonsburg Water Co. v. Prestonsburg Board of Supervisors, 279 Ky. 551, 131 S.W.2d 451. Cf. Jepsen's Appeal, supra. We need not say here what relief appellant may have been entitled to without the above mentioned record and request. Attention is called to comment on the average percentage criterion in Hamm v. State of Minnesota, 255 Minn. 64, 95 N.W.2d 649. In the case at bar the average percentage over two-thirds of the specific properties closely support and complement each other. Reversed and remanded with instructions.

SMITH, P. J., and RENTTO and HANSON, JJ., concur.

ROBERTS, J. (dissenting in part). The statutory standard of true and full value in the assessment of property (SDC 1960 Supp. 57.0334) is a means of attaining uniformity and equality required by law. The statute specifies a sixty per cent ratio of such assessed value as the taxable value of all property and the implicit meaning of this is that there shall be equality of treatment and burden. The assessment and equalization of property at a uniform level below the sixty percent ratio, though contrary to the statutory direction, is a common practice in this state. SDC 1960 Supp. 57.0406 authorizes the county board of equalization to correct inequalities made by the assessor in assessments of property within a taxing district. If all property therein is assessed at a uniform level below the sixty per cent ratio, property owners are not denied uniformity and equality of treatment. Sioux Falls Savings Bank v. Minnehaha County, 29 S.D. 146, 135 N.W. 689. It is the duty of a county board to lower an assessment of an aggrieved property owner where disparity can be eliminated by reduction to a common level or ratio though it is below the standard fixed by law. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340.

The right here invoked is relief from taxation that is obviously excessive and discriminatory. The court found "that there is a discrimination made by the City Assessor

in fixing the appraised value of various and different tracts of land in Rapid City * * * as shown by competent undisputed evidence." This finding goes to the existence of discrimination in the assessment of real property and does not determine the extent of relief or reveal a fact basis for determining a ratio of assessed value to actual value in Rapid City. The court expressly found that a common level or percentage ratio of true and full value at which property in the year in question was assessed could not be determined and upon this assumption reduced the assessment of appellant's property to the statutory standard of true and full value and sixty per cent thereof as the taxable value. Appellant insists that it is entitled to have its assessment reduced to the percentage of that value at which other lands in the taxing district are taxed even though this is below the statutory standard. The ultimate conclusion of the majority opinion is that this action be remanded with instructions to enter judgment reducing the valuation of appellant's land to 42 per cent of the actual value found by the trial court. The initial determination of the amount or extent of relief in my opinion is for the trial court.

If the ratio or percentage of true and full value at which property in 1958 was generally assessed in Rapid City was an admitted fact, the disparity could readily be corrected by reduction of the assessment of appellant's property to that level. The assessors emphatically disavowed the employment by them of a fixed ratio below the sixty per cent statutory standard. The county director of equalization when cross-examined by counsel for appellant testified that he had reported to the Pennington County Board of Equalization that business lots in Rapid City were assessed at "some 42 per cent of true value". This answer based on a study made by tax officials to determine the ratio of assessed values to actual values in Pennington County was in no sense conclusive. The trial court could properly have concluded that seventeen reported sales underlying this ratio was not substantial and it may too be observed that

the sales may have included properties outside the taxing district of Rapid City.

Evidence of reported sales of real property within the city and the amounts at which they were assessed and testimony of qualified experts as to values of land in Rapid City was received. A precise ratio or common level to true and full value at which land generally was assessed could not in the opinion of the court be found from the record. The court was justified in so concluding. If such ratio is susceptible of proof, it is too onerous a burden to impose on an aggrieved property owner. This situation emphasizes the need of a practical basis upon which relief because of lack of uniformity may be granted. The use of an average ratio appears to have been approved elsewhere in recent decisions. See Buerger v. Allegheny County Board of Property Assessment, 188 Pa.Super. 561, 149 A.2d 466; People ex rel. Yaras v. Kinnaw, 303 N.Y. 224, 101 N.E.2d 474; In re Appeals of Kents 2124 Atlantic Ave., 34 N.J. 21, 166 A.2d 763.

The trial court did not consider whether an average ratio may be used to deal with the problem of inequality and as stated made no finding in that regard. The majority opinion seemingly would give effect to an average ratio, but does not make clear what evidence may properly be considered in determining such ratio. The evidence ordinarily considered is that of reported sales. The aggregate selling prices of parcels of properties sold compared to the aggregate assessments on the same properties produce the resulting average ratio. This has the advantage of confining proof to fact evidence and excluding less reliable opinion evidence as to values. See Buerger v. Allegheny County Board of Property Assessment, supra; In re Appeals of Kents, supra. The trial court may consider as pointed out in the case last cited "any weakness which may appear, as, for example, a paucity of sales in the municipality concerned or some imbalance caused by some unusual experience." In the instant proceeding there were circumstances with respect to some sales affecting their proba-

tive weight in evidencing an average ratio. It was within the province of the trier of fact to evaluate these facts.

The cause should in my opinion be remanded for further proceedings to determine upon the present record an average ratio upon which basis appellant would be entitled to judgment. I would, therefore, reverse the judgment and remand the cause with instruction to the trial court as indicated.